SECURITY BANK & TRUST COMPANY OF PONCA CITY, OKLAHOMA, and The Town of Grand Junction, Tennessee, Plaintiffs,

v.

FABRICATING, INC., E.C. Holman and Charles E. Bruce,

and

Walter Podrog, L.J. Perry, J.W. Caperton, Union Planters National Bank, and all Known Bondholders of Town of Grand Junction Bonds Date October 1, 1972, Defendants.

J. Frank MANNING and Walter Podrog, Representatives of the Class of Bondholders of Town of Grand Junction Bonds, Dated October 1, 1972 (Fabricating, Inc.), Counter-Plaintiffs-Appellants,

v.

SECURITY BANK & TRUST COMPANY OF PONCA CITY, OKLAHOMA, and The Town of Grand Junction, Tennessee and Waring, Cox, James, Sklar and Allen, a Partnership Composed of Allen Cox, Jr., Roane Waring, Jr., Erich William James, Robert Lee Cox, Jerald H. Sklar, Lewis F. Allen and Roger D. Fish, as General Partner, Counter-Defendants-Appellees.

Supreme Court of Tennessee, at Jackson.

Dec. 19, 1983.

Rehearing Denied July 9, 1984.

H. Morris Denton, Bolivar, Agnes Thornton Bird, Frank B. Bird, Maryville, for counter-plaintiffs-appellants; Denton & Cary, Bolivar, Bird, Navratil & Bird, Maryville, of counsel.

Leo Bearman, Jr., Memphis, for counter-defendants-appellees; Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, of counsel.

## OPINION

BROCK, Justice.

As the parties are presently aligned, this is a class action brought by representatives of a class of bondholders of the Town of Grand Junction, Tennessee, against the law firm of Waring, Cox, James, Sklar & Allen for damages resulting from alleged malpractice.

A judgment was rendered in favor of the bondholders against the Waring firm and against the Town of Grand Junction in the Chancery Court for Hardeman County, but the judgment against the Waring firm was reversed by the Court of Appeals, as was the judgment against the Town of Grand Junction, and the cause was dismissed as to both defendants. We granted the application of the bondholders for an appeal from the judgment of the Court of Appeals, limited to a consideration of the "issues that relate to the statutes of limitation as they may apply to the class' actions against the law firm of Waring, Cox, James, Sklar & Allen."

## I

This controversy arose out of the issuance of industrial revenue bonds by the Town of Grand Junction, Tennessee, for the purpose of financing the construction of a manufacturing plant to build modular motel rooms. Half of the bonds were issued in October, 1972, and the other half were issued in November, 1972; their default occurred on October 1, 1974.

The Mayor of Grand Junction, Carl Dunn, Jr., had been contacted by Charles Bruce, a former resident of Grand Junction who had moved to Texas. It appears that Bruce was an old friend of the Dunn family and enjoyed a good reputation in Grand Junction. Bruce and his partner, E.C. Holman, proposed to form a corporation to be known as Fabricating, Inc., which would operate the above mentioned manufacturing plant on land leased from the Town of Grand Junction; the whole venture was to be financed through the proposed issuance of industrial revenue bonds by the Town, the bonds to be repaid through rents received by the Town from the proposed corporation lessee. Bruce and Holman proposed to, and did, personally guarantee the bond issue and in support of these guaranties submitted financial statements of their personal estates and financial condition which purported to have been prepared by Lester H. Centu, a Certified Public Accountant.

The Town of Grand Junction employed Mr. Jerald Sklar, an attorney with the law firm of Waring, Cox, James, Sklar & Allen, to serve as special bond counsel to the Town for the purpose of passing upon the legality and non-taxability of the proposed bond issue, for the preparation of the lease to Fabricating, Inc., and a trust indenture

and, of special interest in this litigation, for the preparation of the offering circular which was employed in the issuance and merchandising of the bond issue. The Security Bank & Trust Company of Ponca City, Oklahoma, served as trustee under the revenue bond issue and, as such, held the funds received from the bond issue and disbursed them as the plant was built.

The purported financial statements of Bruce and Holman were attached to the offering circular used in the promotion of the bond issue.

The bond coupons falling due on October 1, 1974, defaulted.

It was learned that Bruce and Holman did not have the assets reflected on their financial statements and that Lester Centu was not a Certified Public Accountant.

One of the holders of the defaulted bonds was Walter Podrog of Palm Beach, Florida, who possessed a law degree and was experienced in both general obligation and revenue bonds. As the owner of $10,000.00 worth of the defaulted bonds, Mr. Podrog began a personal investigation into the reasons for the default. He contacted the defendant attorney Jerald Sklar, Charles Johnson, the attorney for the Trustee bank, Larry Stephenson, President of the bank, and Mayor Dunn and others. On May 15, 1975, Mr. Podrog wrote a letter to attorney Charles Johnson in which he contended that the Town, the Mayor, the council, the law firm of Waring, Cox, James, Sklar & Allen, and others were aware of the true character of the guarantors, Bruce and Holman, but had failed to check into their financial statements, much to the serious detriment of the bondholders. Then, on July 21, 1975, Mr. Podrog wrote a letter to the Trustee bank recommending that civil suit be instituted on behalf of all bondholders against the Town, the Mayor, the council, the law firm of Waring, Cox, James, Sklar & Allen, Ewing Harris, the general counsel for the Town of Grand Junction, Tennessee, and the underwriters of the bond issue for causing the loss suffered by the bondholders. Still later, on September 30, 1975, Mr. Podrog wrote a letter to all bondholders in which he stated:

"The correspondence, telephone calls and inquiries, including a personal visit to Grand Junction, convinced me that this ill-fated promotion was fraudulently inspired from the start. All involved in the promotion and ultimate sale of bonds were at least negligent in permitting false financial statements and apparent forged CPA certifications to be publicized and circulated as true. One of the guarantors was Mayor Dunn's employer and presently is a partner in the Tennessee Pewter Company being operated in a portion of subject premises. An apparent $300,000.00 windfall profit was made by guarantors and/or others.

\* \* \* \* \* \*

"After the total losses of bondholders is determined, civil action for damages should be filed against the Town of Grand Junction, its Mayor, its council, the original underwriters and all attorneys involved in their promotion and sale of the bonds, to the purchasers, due to the carelessness and negligence in permitting fraudulent negligent statements to be published and circulated."

The original complaint in this action was filed on February 10, 1975, in the Chancery Court by the Security Bank & Trust Company of Ponca City, Oklahoma, and the Town of Grand Junction, Tennessee, plaintiffs, against Fabricating, Inc., a corporation, and E.C. Holman and Charles E. Bruce, the two guarantors of the industrial revenue bonds issued by the Town of Grand Junction, dated October 1, 1972, and November 1, 1972. This complaint sought reimbursement of monies due the Bank as trustee of the bond issue when the issue failed and the guarantors refused to make good on their guaranty. This original complaint was amended twice and in the second amended complaint filed on November 24, 1975, the bondholders were named defendants, as a class, and the Trustee Bank sought a declaratory judgment that the actions taken by the Bank, its agents, its attorneys and employees in administering

and controlling the bond trust assets and estate had been proper and lawful.

Bondholder Podrog filed an individual answer to this second amended complaint on January 6, 1976, but did not file any counter, cross, or third-party complaint at that time. Bondholders, J. Frank Manning and Walter Podrog, were appointed representatives of the class of bondholders and, as such, filed an answer to the second amended complaint and also filed a third-party complaint against the defendant law firm, Waring, Cox, James, Sklar & Allen, and the members thereof alleging various acts of negligence on the part of Mr. Sklar in performing his duties as bond counsel with respect to the bond issue and particularly with respect to the offering circular which was published and circulated to assist in promoting the sale of the bonds. The primary allegation was that Mr. Sklar should have discovered the falsity of the financial statements of the promoters and guarantors of the bonds, that Mr. "Centu" was not a CPA, that the underwriters of the bond issue in question were under investigation by government agencies with respect to their activities in connection with other securities and that Mr. Sklar's failure to discover and disclose these and other deficiencies was a direct and proximate cause of the loss suffered by the bondholders. The date of the filing of this cross-action against the Sklar firm was November 24, 1976.

At the same time the bondholder class filed a counterclaim against the Security Bank & Trust Company of Ponca City, Oklahoma.

The original suits brought by the Trustee Bank and the Town of Grand Junction against Fabricating, Inc., and the promoters and guarantors, Bruce and Holman, were dismissed. A different suit was filed against Bruce and Holman in Texas in an effort to enforce their contract of guaranty of the bonds. Prior to the trial in the instant cause, the Security Bank & Trust Company of Ponca City, Oklahoma, settled its liability with the bondholder class for a total of $250,000.00 which was approved by the Chancery Court.

Eventually, all that remained for trial was the claim of the bondholder class against the bond attorneys and the Town of Grand Junction, Tennessee. In addition to the claim of malpractice made against bond counsel, the bondholder class alleged that bond counsel and the Town of Grand Junction had violated the Tennessee Municipal Securities Act of 1972, T.C.A., § 9–1401 *et seq.*

The Chancellor found the issues in favor of the bondholder class and awarded a decree in its favor against the defendant attorneys and the Town of Grand Junction in the amount of $491,000.00 plus interest, making a total judgment of $505,716.78.

The Court of Appeals reversed the decree of the Chancellor and dismissed the action of the bondholders, concluding that, with respect to bond counsel, the bondholders' action was barred by the statute of limitations stated in T.C.A., § 28–3–104, which requires that "actions against attorneys for malpractice" must be brought within one year of the accrual of the cause of action and concluding further, with respect to the Town of Grand Junction, that the evidence failed to show that the Town had violated the provisions of the Tennessee Municipal and Securities Act of 1972, T.C.A., § 9–1401, *et seq.*

This Court granted the application of the bondholder class to appeal, limited to a consideration of the issues concerning the defense of the statute of limitations which had been sustained by the Court of Appeals.

## II

■ Clearly, the cause of action asserted against the defendant attorneys is one for malpractice in the performance of their duties as bond counsel; thus, the statute of limitations to be applied is that contained in T.C.A., § 28–3–104, which provides:

"... actions and suits against attorneys for malpractice whether said actions are grounded or based in contract or tort,

... shall be commenced within one year after cause of action accrues."

*See, Ameraccount Club, Inc. v. Hill,* Tenn., 617 S.W.2d 876 (1981).

### When was this action commenced?

■ We hold that the action of the bondholder class was not commenced until November 24, 1976, the date of the filing by the bondholders of their third-party complaint against the defendant bond attorneys. Until they were brought in by service of process under the third-party complaint, the third-party defendant attorneys were not parties to the action; therefore, the argument of the bondholders that the running of the statute of limitations was tolled by the filing on January 9, 1976, by bondholder Podrog of his individual answer to the second amended complaint filed by the original plaintiffs in which he made generalized claims for relief against the original plaintiffs, cannot be sustained; Podrog's individual answer cannot be construed as asserting any claim whatever against bond counsel because they were not parties, plaintiff or defendant, at that time.

Bond counsel did not become real parties in interest merely by acting as counsel for the Security Bank & Trust Company in the filing and prosecution of the second amended complaint which sought a declaratory judgment against the bondholder class exonerating the Bank, its original counsel, Phipps, Johnson & Holmes, and the Bank's other employees of any liability arising out of the administration of the trust fund consisting of the proceeds derived from the sale of the bonds. Bond counsel did not represent the Bank in the administration of the trust fund and had no interest, *as parties,* in the outcome of that case. Bond counsel's only interest was that of attorneys representing their client. *Cf. Tennessee Eastman Company v. Adams,* 214 Tenn. 451, 381 S.W.2d 269 (1964). In the *Tennessee Eastman Company* case this Court recognized that one who is not a party to litigation may, by reason of its control of the proceedings and its financial interest in the outcome thereof, become a real party in interest and, therefore, bound by the judgment rendered therein. Here, however, bond counsel did not have such interest and control in the second amended complaint.

The result is that since bond counsel were neither named parties nor "real parties in interest" at the time Mr. Podrog filed his answer to the second amended complaint on January 9, 1976, the filing of that answer did not toll the running of the statute of limitations in their favor.

### When did this cause of action accrue?

We now consider whether or not the plaintiffs' cause of action accrued within one year of the filing of their third-party complaint on November 24, 1976. This Court has had occasion in several recently decided cases to consider various aspects of the problem of determining the date on which a plaintiff's cause of action has accrued sufficiently to start the running of the statute of limitations. *See, Teeters v. Currey,* Tenn., 518 S.W.2d 512 (1974); *McCroskey v. Bryant Air Conditioning Company,* Tenn., 524 S.W.2d 487 (1975); *Ameraccount Club, Inc. v. Hill, supra; Foster v. Harris,* Tenn., 633 S.W.2d 304 (1982); *Hoffman v. Hospital Affiliates, Inc.,* Tenn., 652 S.W.2d 341 (1983).

■ In *Ameraccount* the action was one by a client against his attorney for malpractice in which we held that the statute did not begin to run until the injury to the plaintiff occurred, although he knew prior thereto of the attorney's negligence which eventually caused the injury. Obviously, negligence without injury is not actionable; hence, the statute of limitations could not begin to run until the attorney's negligence had resulted in injury to the plaintiff. In the instant case, the injury to the bondholders occurred on October 1, 1974, *when the bonds defaulted.* There is no merit whatever in the plaintiffs' argument that their injury did not occur until the suit against the guarantors in Texas was concluded. A plaintiff cannot be permitted to wait until he knows all of the

injurious effects as consequences of an actionable wrong. *Taylor v. Clayton Mobile Homes, Inc.*, Tenn., 516 S.W.2d 72 (1974).

The date of injury to the bondholders being thus established, we must next determine when the bondholders knew, or in the exercise of reasonable care should have known, of the alleged negligence or malpractice on the part of bond counsel and of its causal relation to the injury suffered by the bondholders. The Court of Appeals concluded that the evidence showed that such knowledge was acquired no later than September 30, 1975, the date of Mr. Podrog's letter to all the other bondholders, a portion of which is hereinabove quoted. In that letter he asserts that ". . . all involved in the promotion and ultimate sale of bonds were at least negligent in permitting false financial statements and apparent forged CPA certificates to be publicized and circulated as true."

Earlier, in a letter dated July 21, 1975, Mr. Podrog had written to Mr. Larry Stephenson, President of the Security Bank & Trust Company, Ponca City, Oklahoma, wherein he stated:

"I want to consult with them (all bondholders) and see if the majority agree with me that we should immediately:

\* \* \* \* \* \*

(5) institute civil suit for damages to all bondholders due to negligence, et cetera, against the Town of Grand Junction, its Mayor, its council, Waring, Cox, James, Sklar & Allen, Ewing J. Harris, Hamilton Brothers and Investors Associates of America for failing to verify guarantors' financial statements, et cetera, et cetera."

In his letter of September 30, 1975, to all of the other bondholders, Mr. Podrog has recommended:

"After the total losses to bondholders is determined, civil action for damages should be filed against the Town of Grand Junction, its Mayor, its council, the original underwriters, and all attorneys involved in the promotion and sale of the bonds, to the purchasers due to the carelessness and negligence in permitting fraudulent financial statements to be published and circulated."

It is clear, then, that, at least as of September 30, 1975, the bondholders knew that they had sustained an injury and were aware of the existence of their claim for malpractice or negligence against bond counsel in failing to discover the fraudulent nature of the financial statements of the promoters-guarantors which were attached to the offering circular.

The bondholders argue that they were not aware of certain evidence of malpractice on the part of the bond counsel until they took Mr. Sklar's deposition in March, 1976. That may be, but, as we pointed out in *Hoffman, supra,*

"The 'discovery' rule would apply only in cases where the plaintiff does not discover and reasonably could not be expected to discover that he has a right of action. Furthermore, the statute is tolled only during the period when the plaintiff has no knowledge that a wrong has occurred, and, as a reasonable person is not put on inquiry." *Hoffman v. Hospital Affiliates, Inc.*, 652 S.W.2d 341 at 344.

Plaintiffs have argued but have not proven that defendant bond counsel concealed plaintiffs' cause of action. Whatever plaintiffs learned upon the taking of Sklar's deposition in March, 1976, could have been learned much earlier if due diligence had been exercised by plaintiffs.

We have examined other complaints made by appellants-plaintiffs but find them to be without merit.

The judgment of the Court of Appeals is affirmed. Costs incurred in this Court are taxed against appellants-bondholders.

COOPER, HARBISON and DROWOTA, JJ., and WALKER, Special Justice, concur.

## OPINION ON PETITION TO REHEAR

BROCK, Justice.

I

The appellants (bondholder class) have filed a petition to rehear in this cause

which we have considered and find to be without merit. Accordingly, the petition to rehear filed by the bondholder class is denied.

## II

The appellees, the Sklar firm, have requested, pursuant to Rule 40(d), T.R.A.P., that the Court authorize as an item of additional recoverable costs on appeal the premiums incurred by them for procuring and maintaining, while this case was in the appellate courts, premiums for a bond for stay of the judgment or decree rendered in the trial court. Appellees rely upon Rule 40(c), T.R.A.P., which provides:

"*Recoverable costs on appeal*

"Recoverable costs on appeal include the cost of preparing and transmitting the record, the cost of a transcript of the evidence or proceedings, the cost of producing necessary copies of briefs and the record, the premiums paid for bonds to preserve rights pending appeal, and any other fees of the appellate court or clerk."

This provision became part of our law for the first time on July 1, 1979, the effective date of the Tennessee Rules of Appellate Procedure. We are not aware of any court decisions construing it.

The bondholder class opposes this application for additional costs primarily upon the ground that the bond for stay was not necessary because the bondholder class at no time in this litigation has taken or threatened to take any action to enforce the judgment of the trial court pending appeal; they point out that

"... since there are 140-plus members of the class, it would have been the height of folly for the class representatives to have sought to enforce the judgment and distribute the funds while an appeal was pending."

They further point out that even if there had been any necessity for a stay order at the time the original appeal was taken that necessity would have ended on February 3, 1981, the date of the judgment of the Court of Appeals reversing and setting aside the decree granted in the trial court in favor of the bondholder class.

Our research indicates that in other jurisdictions courts exercise discretion in considering whether or not, and to what extent, if any, an application for allowance of such premiums for stay or supersedeas bonds should be granted or denied. *See* Annot., 90 A.L.R.2d 448 (1963).

Rule 6 of the Tennessee Rules of Appellate Procedure *requires* that a bond for costs on appeal be filed by the appellant in the trial court with the notice of appeal. That rule further provides that this bond shall be in the sum or value of $500.00 unless the trial court fixes a different amount. It is not necessary that an appellant file any other bond unless he desires to stay execution of the judgment rendered in the trial court, in which case, Rule 62 of the Tennessee Rules of Civil Procedure requires that a bond for stay be executed and filed. The right to appeal is not conditioned upon the filing of a bond for stay; but, if the appellant desires the protection of a stay, then the bond for stay must be filed. The pertinent provisions of Rule 62, Tennessee Rules of Civil Procedure, are as follows:

"62.04   *Stay on appeal*

"Except as otherwise provided in Rule 62.01, when an appeal is taken the appellant by giving a bond may obtain a stay. The bond may be given at or after the time of filing the notice of appeal. The stay is effective when the bond is approved by the court.

"62.05   *Bond for stay*

A bond for stay shall have sufficient surety and: (1) if an appeal is from a judgment directing the payment of money, the bond shall be conditioned to secure the payment of the judgment in full, interest, damages for delay, and costs on appeal; ...."

One principle applied by courts in other jurisdictions is that only necessary disbursements may be allowed as taxable costs. *Christenson v. Cudahy Packing Co.*, 84 Cal.App. 237, 257 P. 906 (1927);

*Giemza v. Allied American Mut. Fire Ins. Co.,* 10 Wis.2d 555, 106 N.W.2d 609 (1960); *Hackenjos v. Kemper Chevrolet Co.,* 193 Minn. 37, 257 N.W. 518 (1934), *petition for rehearing* 258 N.W. 433 (1935). In the *Christenson* case where the plaintiff recovered a money judgment and, on appeal, the judgment was modified to award costs to the defendant, it was held that the defendant could not recover the premium paid on a surety bond to stay execution of the judgment, since the premium on such a bond was not a necessary expenditure within the meaning of the code section permitting recovery of such expenditures. Although the court in the *Giemza* case, *supra,* allowed a stay bond premium to be included as an item of recoverable costs, it clearly recognized the validity of the principle that in order for such a premium to be allowed as costs the appellant must show that the stay bond was reasonably necessary. Upon the facts there presented, the court rejected the contention of the appellee that the premium should not be recovered because the undertaking to stay execution was unnecessary, stating that it sufficiently appeared that the plaintiff-appellee's attorney had informed the defendant-appellant's attorney that execution would be issued if an appeal were taken, and that this was an adequate showing of need for an undertaking to stay execution.

We hold that before stay bond premiums should be awarded as recoverable costs on appeal under the authorization set out in Rule 40(c) of the Tennessee Rules of Appellate Procedure, the applying appellant should show that there was a necessity for obtaining a stay of execution pending the appeal. Since the requirement that necessity be shown had not been announced prior to the instant appellant's application for allowance of costs, we deem it just and proper to allow a further opportunity for the appellant to demonstrate such necessity and for the appellee class to demonstrate the lack of such necessity, by affidavits or otherwise. In accordance with the time schedule set out in Rule 40(d), T.R.A.P., the appellant is allowed fifteen (15) days from the filing of this opinion to file such proof as it desires and the appellee ten (10) days from receipt of appellant's proof in which to file opposing proof. A decision of this one issue will be deferred until such proof is submitted to the Court.

COOPER, C.J., HARBISON and DROWOTA, JJ., and WALKER, Special Justice, concur.