## IN THE COURT OF APPEALS OF TENNESSEE,
## AT KNOXVILLE

FILED

**May 12, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

|  |  |  |
|---|---|---|
| | ) | |
| **SANDRA TANAKA and**, | ) | Blount County Circuit Court |
| **WARWICK INSULATION CO., INC.**, | ) | No. L-1811 |
| | ) | |
| Plaintiffs/Appellants. | ) | |
| | ) | |
| VS. | ) | C.A. No. 03A01-9710-CV-00463 |
| | ) | |
| **MARTHA MEARES**, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |
| | ) | |

_____

From the Circuit Court of Blount County at Maryville.
**Honorable Dick Jerman, Jr., Judge by Interchange**

**W. Andrew Fox**, Knoxville, Tennessee
Attorney for Plaintiffs/Appellants.

**R. Franklin Norton**,
**Geoffrey D. Kressin**,
NORTON & LUHN, P.C., Knoxville, Tennessee
Attorneys for Defendant/Appellee.

OPINION FILED:

**REVERSED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Plaintiffs Sandra Tanaka and Warwick Insulation appeal the trial court's order entering summary judgment in favor of Tanaka's former attorney, Defendant/Appellee Martha Meares. We reverse the trial court's judgment based on our conclusion that a genuine issue of material fact exists as to whether the Plaintiffs' action against Meares is barred by the one-year statute of limitations applicable to legal malpractice actions.

This legal malpractice action arose out of Meares' former representation of Tanaka in a divorce proceeding in the General Sessions Court for Blount County. In her complaint for legal malpractice filed February 11, 1997, Tanaka alleged that Meares' representation of Tanaka in the proceedings before the General Sessions Court fell below the applicable standard of care in that Meares:

A. Failed to enter exhibits into evidence at trial and/or failed to submit them to the court for review.

B. Failed to present witnesses necessary to show [that] the breakdown of the marriage was the fault of [Tanaka's husband], and not [Tanaka].

C. Failed to move to find [Tanaka's husband] in contempt for failure to make support payments.

D. Failed to move for a continuance or make objection at the trial when the Judge expressed his intent to finish the trial by 3:30 p.m., although to finish the trial by this time [Meares] would be unable to elicit testimony from witnesses necessary to properly present . . . Tanaka's position.

E. Failed to make proper adjustments to the final decree protecting [Tanaka's] interests in a bank account or [to] ensure [that] the Court understood the status of the bank account awarded to [Tanaka].

F. Failed to advise the Court that Warwick Insulation Co., Inc. was not fully owned by . . . Tanaka, and had other shareholders, so that the assets of the corporation should not have been considered solely . . . Tanaka's.

G. Failed to supply an expert to testify on behalf of [Tanaka] regarding the value of real estate.

H. Failed to respond to the Judge's request for a new proposal because of his difficulty in understanding the issues, by submitting briefs, exhibits, or proposals.

I. Failed to prepare a final decree as directed by the Court.

Meares responded to Tanaka's complaint by filing a motion to dismiss or, in the alternative, a motion for summary judgment in which Meares contended, *inter alia*, that Tanaka's action was barred by the one-year statute of limitations applicable to legal malpractice actions. *See* T.C.A. § 28-3-104(a)(2) (Supp. 1990). Meares filed no affidavits or depositions in support of her motion for summary judgment. Instead, Meares relied upon the technical record of the divorce proceeding in the General Sessions Court and of the appeal to this court, certified copies of which she filed in the present action. *See Watson v. Watson*, No. 03A01-9601-GS-00039, 1996 WL 479655 (Tenn. App. Aug. 22, 1996). The technical record of the prior divorce proceeding revealed the following sequence of events:

| | |
|---|---|
| July 22, 1994 | The General Sessions Court judge conducted a trial in the underlying divorce action. |
| October 17, 1994 | Tanaka filed an affidavit whereby she sought to introduce certain financial records which had not been introduced at trial. |
| January 19, 1995 | The General Sessions Court judge entered its memorandum opinion. |
| May 9, 1995 | The General Sessions Court judge entered a final divorce decree which incorporated the provisions of its memorandum opinion and which distributed the parties' property. |
| May 10, 1995 | Meares, on behalf of Tanaka, filed a motion to alter or amend the final divorce decree in which Meares raised certain property valuation issues. |
| August 21, 1995 | The General Sessions Court judge entered an order denying the motion to alter or amend. |
| September 15, 1995 | Meares, on behalf of Tanaka, filed a timely notice of appeal to this court. |
| February 28, 1996 | M. Jeffrey Whitt advised this court that he was representing Tanaka in her appeal. |
| August 21, 1997 | This court filed its opinion and judgment affirming the final decree of the General Sessions Court. |

In opposing Meares' motion for summary judgment, Tanaka filed an affidavit in which she averred that:

1.      I did not know during the time that Martha Meares represented me that the actions or omissions by Ms. Meares alleged in the complaint in this matter were wrongful conduct or that these actions or omissions breached her duty to me.

2.      When I questioned her regarding the outcome of the trial in *Watson v. Watson* and the rehearing, she blamed the Judge for the poor decision.

3.      Upon either the third consultation with Jeff Whitt or sometime thereafter, I discovered that Ms. Meares' actions or omissions while representing me could be considered malpractice.

4.      I did not consult with Jeff Whitt a second or third time until after I received [Meares'] letter of February 12, 1996.

5.      To my best knowledge, I met with Martha Meares on February 14, [1996] to get the files to deliver to Jeff Whitt for our second consultation.

The February 12, 1996, letter referenced in Tanaka's affidavit was a letter from Meares informing Tanaka that her appellate brief was due in this court on February 27, 1996.  Taking the position that she did not discover Meares' malpractice until after receipt of the February 12, 1996, letter, Tanaka contended that the present legal malpractice complaint, filed February 11, 1997, was timely filed.

Based on the foregoing evidence, the trial court granted Meares' motion for summary judgment, ruling that, as a matter of law, the statute of limitations had expired and the Plaintiffs' action for legal malpractice was time-barred.  This appeal followed.

Summary judgment is appropriate only when the parties' "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R.C.P. 56.04.  In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, the trial court is required to consider the question in the same manner as a motion for directed verdict made at the close of the plaintiff's proof.  *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993).  That is, "the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11.

Our supreme court has developed a specific formulation of the "discovery rule"

applicable to the issue of when a legal malpractice action accrues for statute of limitations purposes. *See Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995); *Chambers v. Dillow*, 713 S.W.2d 896 (Tenn. 1986); *Security Bank & Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860 (Tenn. 1983), *cert. denied*, 469 U.S. 1038 (1984); *Ameraccount Club, Inc. v. Hill*, 617 S.W.2d 876 (Tenn. 1981). In the most recent of these decisions, the supreme court concluded that the "legal malpractice discovery rule" is composed of two distinct elements: (1) the plaintiff must have suffered a legally cognizable or actual injury as a result of the defendant's negligence; and (2) the plaintiff either must have known or in the exercise of reasonable diligence should have known that the injury was caused by the defendant's negligence. *Carvell v. Bottoms*, 900 S.W.2d at 28.

For purposes of these summary judgment proceedings, we conclude that, if Tanaka suffered a legally cognizable injury, such injury occurred, at the latest, by August 21, 1995, when the General Session Court judge entered its final judgment in the underlying divorce action. *See Rayford v. Leffler*, 953 S.W.2d 204, 207-08 (Tenn. App. 1997) (concluding that inmate suffered legally cognizable injury upon denial of post-conviction motion or, at the latest, upon denial of motion for reconsideration). Accordingly, we agree that the dispositive issue presented by this case relates to the second prong of the discovery rule and may be stated thusly: whether Tanaka knew or in the exercise of reasonable diligence should have known more than one year prior to filing this lawsuit that her injury was caused by Meares' negligence.

In discussing this second element, the supreme court has indicated that the "knowledge" component of the discovery rule may be supported by evidence of actual or constructive knowledge of the injury. *Carvell v. Bottoms*, 900 S.W.2d at 29. As a general rule, the one-year statute of limitations for legal malpractice actions begins to run when the plaintiff has actual knowledge that he has been injured as a result of the defendant's breach of the appropriate legal standard. *Id*. Under the theory of constructive knowledge, however, the statute of limitations may begin to run at an earlier date if the evidence shows that the plaintiff is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of the defendant's wrongful conduct. *Id*.

In articulating this theory of constructive knowledge, the supreme court and this court

have stressed that the plaintiff's knowledge need not rise to the level of an actual awareness that her injury constituted a breach of the appropriate legal standard. Instead, it is sufficient if the plaintiff knows or in the exercise of reasonable care and diligence should know that she has sustained an injury as a result of the defendant's wrongful or tortious conduct. *Carvell v. Bottoms*, 900 S.W.2d at 29 (citing *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)); *accord Smith v. Petkoff*, 919 S.W.2d 595, 597 (Tenn. App. 1995); *Hayes v. Cowan*, No. 01A01-9503-CV-00102, 1995 WL 458987, at *3 (Tenn. App. Aug. 4, 1995). In the context of summary judgment proceedings, this court also has recognized that

> questions involving whether a person's behavior conforms to a standard of reasonable and diligent conduct, such as the second part of the malpractice discovery rule test, are questions of fact for a jury, unless the facts and the inferences drawn therefrom are so clear that reasonable persons could not disagree on the answer.

*Porter-Metler v. Edwards*, No. 03A01-9709-CV-00393, 1998 WL 131515, at *3 (Tenn. App. Mar. 25, 1998).

After carefully reviewing the evidence presented in this case, we conclude that a genuine issue of material fact exists as to whether Tanaka knew or should have known more than one year prior to filing this legal malpractice action that she had suffered an injury as a result of Meares' wrongful conduct. When viewed in the light most favorable to Tanaka, this evidence reveals that Tanaka did not know during Meares' representation of her that Meares had performed any actions or omissions which constituted wrongful conduct. Although Tanaka concedes that she was present during the divorce proceedings in the General Sessions Court, the record contains no evidence that Tanaka either understood or should have understood the wrongful or tortious nature of the alleged actions or omissions by Meares. Stated another way, the record contains no evidence to indicate why a lay person such as Tanaka would have questioned Meares' trial performance. Moreover, Tanaka was not put on notice of any wrongful conduct by the General Sessions Court judge's subsequent judgment because, when Tanaka questioned Meares about the unfavorable outcome, Meares blamed the judge for making a poor decision. Tanaka did not learn that Meares' trial performance constituted possible legal malpractice until she retained another attorney to represent her on appeal. Under these circumstances, a genuine issue of material fact remains as to

whether Tanaka knew, or in the exercise of reasonable diligence should have known, prior to February 12, 1996, that she had been injured as a result of Meares' wrongful or tortious conduct.

We believe that our conclusion is supported by this court's recent decision in *Porter-Metler v. Edwards*, No. 03A01-9709-CV-00393, 1998 WL 131515 (Tenn. App. Mar. 25, 1998). In that case, the plaintiff filed a legal malpractice action against her former attorney in which she alleged that the attorney had failed to properly reissue summons or timely refile the plaintiff's negligence suit, thus allowing her claim to become time barred. *Porter-Metler*, 1998 WL 131515, at *1. In opposing the attorney's subsequent motion for summary judgment, the plaintiff testified that she was not aware that her case had been dismissed until her attorney sent her a letter advising her that the action had been dismissed and that he could proceed no further on her claim. *Id*., at *2. The attorney apparently countered by arguing that the plaintiff either knew or should have known of the dismissal because he previously had informed the plaintiff that a motion to dismiss was pending in the underlying lawsuit. *Id*., at **3-4. The plaintiff, however, testified that, when she questioned the attorney about the pending motion to dismiss, the attorney assured her that everything was alright and that she did not have to appear at the motion hearing. *Id*. In light of this testimony, we reversed the trial court's summary judgment entered in favor of the attorney. *Id*., at *4. We reasoned that

> To dismiss this action on summary judgment would be tantamount to holding that a lay person, exercising due diligence, should have immediately mistrusted her attorney and began an independent investigation of his actions, despite his assurances that all was well with her case. We think that reasonable minds could differ on this issue, and, therefore, a genuine issue of fact exists.

*Id*.

We similarly think that reasonable minds could differ on whether Tanaka exercised due diligence in this case. In the absence of evidence that Tanaka either knew or should have known that Meares' trial performance was deficient, and in light of the evidence that, when questioned about the outcome of the trial, Meares blamed the unfavorable outcome on the judge's poor decision, we are unable to conclude as a matter of law that a reasonable and diligent person in Tanaka's

position should have known that she had suffered injury as a result of Meares' wrongful conduct.

In urging this court to uphold the summary judgment entered in her favor, Meares cites *Spar Gas, Inc. v. McCune*, 908 S.W.2d 400 (Tenn. App. 1995), for the proposition that, once a plaintiff is aware of a judgment against her arising out of the trial of the case, she is on notice sufficient for the running of the statute of limitations. In *Spar Gas*, however, this court dealt primarily with the first prong of the discovery rule, that of when the plaintiffs suffered a legally cognizable injury, which is not an issue in the present case. *Spar Gas*, 908 S.W.2d at 403-04. Unlike the present case, there was evidence in *Spar Gas* that the plaintiffs had actual knowledge of the defendants' alleged malpractice more than one year prior to filing their legal malpractice action. *Id*. at 402. Specifically, there was evidence that one of the plaintiffs verbally had accused one of the defendant attorneys of "malpractice and incompetence." *Id*. Moreover, the same plaintiff wrote a letter to the defendant attorney refusing to pay any legal bills which were due to "mishandling on the lawyers' part" or "mistakes." *Id*. No such evidence exists in the present case to support Meares' contention that Tanaka either knew or should have known of Meares' alleged negligence more than one year prior to filing this lawsuit.

The trial court's order granting Meares' motion for summary judgment is reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to Meares, for which execution may issue if necessary.

_____
FARMER, J.


_____
CRAWFORD, P.J., W.S. (Concurs)


_____
HIGHERS, J. (Concurs)