# IN THE COURT OF APPEALS OF TENNESSEE, AT JACKSON

FILED

April 23, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

|  |  |  |
|---|---|---|
| **WARNER B. DUNLAP AND** | ) | Gibson County Circuit Court |
| **WARNER B. DUNLAP, M.D., P.C.**, | ) | No. H-2921 |
|  | ) |  |
| Plaintiffs/Appellants. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9801-CV-00025 |
|  | ) |  |
| **RICHARD AYERS, GAULDIN &** | ) |  |
| **AYERS, S. C. & M. PROPERTIES, INC.** | ) |  |
| **AND TOM COPELAND**, | ) |  |
|  | ) |  |
| Defendants/Appellees. | ) |  |
|  | ) |  |

From the Circuit Court of Gibson County at Humboldt.
**Honorable Dick Jerman, Jr., Judge**

**Mimi Phillips**, PHILLIPS, HOWARD & GRUBB, Memphis, Tennessee
Attorney for Plaintiffs/Appellants.

**Jerry O. Potter**, CHAPMAN SELLERS MORROW, Memphis, Tennessee
Attorney for Defendants/Appellees Richard Ayers and Gauldin & Ayers.

**Jerry Kizer, Jr.**,
**Patrick W. Rogers**,
RAINEY, KIZER, BUTLER, REVIERE & BELL, P.L.C., Jackson, Tennessee
Attorneys for Defendant/Appellee S. C. & M. Properties, Inc.

**Sam J. Watridge**, Humboldt, Tennessee
Attorney for Defendant/Appellee Tom Copeland.

OPINION FILED:

**REVERSED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

In this action for accountant malpractice, Plaintiffs Warner B. Dunlap and Warner B. Dunlap, M.D., P.C., appeal the trial court's order entering summary judgment in favor of Defendants/Appellees Richard Ayers, Gauldin & Ayers, S. C. & M. Properties, Inc., and Tom Copeland. We reverse the trial court's judgment based upon our conclusion that the trial court erred in ruling that the Plaintiffs' action against the Defendants was barred by the one-year statute of limitations applicable to accountant malpractice actions.

For purposes of these summary judgment proceedings, the following facts were undisputed. The Defendants are accountants and accounting firms which provided services to Warner B. Dunlap and his Humboldt medical practice, Warner B. Dunlap, M.D., P.C., during various periods between the early 1980's and the mid 1990's. In January 1985, Richard Ayers, who then was employed by Gauldin & Ayers, discovered that Barbara Brown, an employee of Warner B. Dunlap, M.D., P.C., was embezzling money from the medical practice by writing herself extra paychecks. Instead of firing Brown, Dunlap redefined Brown's duties so that she no longer would be permitted to handle money. Dunlap maintained Brown as an employee based, in part, on his lifelong friendship with Brown's husband, Tommy Brown. Dunlap also decided to keep Brown as an employee based upon the assurances of Richard Ayers that he would closely monitor the medical practice account and that he would be able to detect any further embezzlement by Brown. Thereafter, Dunlap made periodic inquiries of Ayers concerning the medical practice account and was assured "that everything was okay."

Despite these precautions, Barbara Brown again began embezzling from the medical practice almost immediately. This time, instead of writing herself extra paychecks, Brown embezzled money by stealing cash from the daily receipts and substituting checks for the cash. Although the record does not make clear precisely how this method of embezzlement worked, Brown was able to hide her thefts for years in this manner because the bank account statements and the medical practice's records each appeared to balance; however, if Dunlap or the accountants had compared the bank account statements with the medical practice's records, such as the practice's day sheet system, they quickly would have discovered discrepancies between the two sets of records.

In October 1986, Gauldin & Ayers was purchased by Steele, Carter & Martin (SCM),[1] a Jackson accounting firm, when SCM's partners decided that they wanted to open an office in Humboldt. In August 1987, Tom Copeland, an SCM employee, began handling the medical practice account. According to Dunlap, one of SCM's partners and Tom Copeland both assured Dunlap that they would continue to closely monitor the medical practice account to ensure that no employee, particularly Barbara Brown, was embezzling from the practice. As did Ayers before them, the SCM partner and Copeland periodically assured Dunlap that "things were okay." Based upon these assurances, Dunlap began allowing Brown to handle money again in the medical practice sometime in 1988. On occasion, Dunlap also asked Brown to make deposits into his personal bank account. In June 1990, Tom Copeland purchased SCM's Humboldt operation, and he personally continued to handle the medical practice account.

Dunlap kept a key to his post office box in the medical practice's office. Medical practice employees, including Barbara Brown, used the key to retrieve both Dunlap's personal mail and the medical practice's mail from the post office. In June 1993, Dunlap instructed Brown not to go to the post office any more. Dunlap explained that he wanted Brown concentrating on more complicated tasks while lesser-paid employees ran errands, such as going to the post office. During the latter part of 1993, Dunlap became suspicious that he was not receiving all of his mail because he had failed to receive bills for his credit card and an insurance premium. In December 1993, therefore, Dunlap had the lock on his post office box changed, and he retained the only key.

On Monday, December 13, 1993, Dunlap opened his post office box and found the bank statement for his personal bank account. Upon examining the bank statement, Dunlap noticed a discrepancy in a deposit ticket. The deposit ticket showed that checks in the amount of $160.87 and $544.72 were deposited, that $1000 in cash was received, and that a total of $705.59 was deposited. Dunlap immediately recognized that these numbers "didn't add up," and he questioned how someone could have received $1000 in cash while still making a net deposit of $705.59. Dunlap recognized Barbara Brown's handwriting on the deposit ticket, but he did not believe that

[1]According to SCM's answer, Steele, Carter & Martin was a professional corporation. Steele, Carter & Martin, P.C., now is known as S. C. & M. Properties, Inc. For purposes of this opinion, we will refer to both entities as "SCM."

Brown had written the $1000 figure in the cash received space. Consequently, Dunlap went to the bank and asked bank employee Sammy Morello to explain the discrepancy. Per Morello's instructions, Dunlap returned to the bank on December 16, 1993. On that day, Dunlap learned that a check for $1,160.87, and not $160.87, was deposited, that the $544.72 check was stolen from the medical practice, and that the person making the deposit did receive $1000 in cash.

Upon learning this information, Dunlap confronted Barbara Brown, who ultimately admitted the theft of $1000 in cash. In the weeks following December 16, 1993, Dunlap's own audit of the medical practice account revealed that Brown had employed similar practices to engage in a pattern of embezzlement from the medical practice since January 1985. Dunlap's audit revealed that, from 1985 to 1993, Brown had stolen in excess of $50,000 from the medical practice.

Consequently, on December 16, 1994, the Plaintiffs filed a complaint for accountant malpractice against the Defendants. Although the record does not make clear when the Plaintiffs filed their summonses, the record indicates that the summonses were issued on December 27, 1994.

The Plaintiffs nonsuited their first action,[2] but they filed another complaint against the Defendants in December 1995. In their respective answers, the Defendants raised various affirmative defenses, including the statute of limitations. The Defendants also moved for summary judgment based upon the statute of limitations and other grounds.

The trial court granted the Defendants' motions for summary judgment, and this appeal followed. In entering summary judgment in favor of the Defendants, the trial court ruled that the Plaintiffs' cause of action accrued on December 13, 1993, and, thus, that the Plaintiffs' action was barred by the one-year limitations period because the action was not commenced until December 16, 1994. On appeal, the Plaintiffs contend that this ruling was in error.

In reviewing the trial court's decision, we are reminded that summary judgment is appropriate only when the parties' "pleadings, depositions, answers to interrogatories, and

---

[2]*See* T.R.C.P. 41.01.

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R.C.P. 56.04. In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, the trial court is required to consider the question in the same manner as a motion for directed verdict made at the close of the plaintiff's proof. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). That is, "the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11.

The statute of limitations for accountant malpractice actions is the same as the statute of limitations for legal malpractice actions. The statute provides that malpractice actions against attorneys, licensed public accountants, and certified public accountants "shall be commenced within one (1) year after the cause of action accrued." *See* T.C.A. § 28-3-104(a)(2) (Supp. 1993). In the present case, the parties agree that the disposition of the statute of limitations issue necessitates a determination of when the Plaintiffs' cause of action against the Defendants accrued and, further, that this determination should be made by applying the discovery rule.

Our supreme court recently explained the application of the discovery rule in the context of legal malpractice actions:

> When the cause of action accrues is determined by applying the discovery rule. Under this rule, a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant. *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998); *Stanbury v. Bacardi*, 953 S.W.2d 671, 677 (Tenn. 1997).
>
> In legal malpractice cases, the discovery rule is composed of two distinct elements: (1) the plaintiff must suffer legally cognizable damage -- an actual injury -- as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct. *Carvell v. Bottoms*, 900 S.W.2d 23, 28-30 (Tenn. 1995).

*John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). After discussing the injury component of the discovery rule, the court then addressed the rule's knowledge component:

The knowledge component of the discovery rule may be established by evidence of actual or constructive knowledge of the injury. *Carvell*, 900 S.W.2d at 29. Accordingly, the statute of limitations begins to run when the plaintiff has actual knowledge of the injury as where, for example, the defendant admits to having committed malpractice or the plaintiff is informed by another attorney of the malpractice. Under the theory of constructive knowledge, however, the statute may begin to run at an earlier date -- whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct. *Id*. We have stressed, however, that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard. *Shadrick*, 963 S.W.2d at 733. Rather, "the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Carvell*, 900 S.W.2d at 29 (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)). "It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial." *Stanbury*, 953 S.W.2d at 678.

*John Kohl & Co.*, 977 S.W.2d at 532-33; *see also Tanaka v. Meares*, 980 S.W.2d 210, 213 (Tenn. App. 1998).

Citing the foregoing language from *John Kohl & Co.*, the Defendants in this case insist that the Plaintiffs' cause of action accrued on December 13, 1993, because on that date Dunlap was aware of facts which were sufficient to put a reasonable person on notice that the Plaintiffs had sustained an injury as a result of wrongful conduct. We disagree with this contention because, after carefully reviewing the record, we conclude that a genuine issue of material fact exists as to whether Dunlap knew or should have known on December 13, 1993, that the Plaintiffs had sustained an injury as a result of wrongful conduct. Moreover, we conclude that a genuine issue of material fact exists as to whether Dunlap knew or should have known, even on December 16, 1993, that the Plaintiffs' injury was the result of the Defendants' wrongful conduct, as opposed to Barbara Brown's wrongful conduct.

In discussing the discovery rule, the supreme court has spoken in terms of what facts are sufficient to put a reasonable person on notice that he has suffered an injury "as a result of wrongful conduct." *John Kohl & Co.*, 977 S.W.2d at 533; *Carvell*, 900 S.W.2d at 29; *see also Terry v. Niblack*, 979 S.W.2d 583, 586 (Tenn. 1998). The Defendants appear to be citing this

language for the proposition that the Plaintiffs' cause of action accrued on December 13, 1993, because on that date Dunlap should have discovered that the Plaintiffs had suffered a loss as a result of Barbara Brown's wrongful conduct. In its decisions, however, the supreme court also has stressed that, before the discovery rule can trigger the commencement of the limitations period, the facts must be sufficient to put a reasonable person on notice that he has suffered an injury "as a result of *the defendant's* negligent or wrongful conduct." *John Kohl & Co.*, 977 S.W.2d at 532 (citing *Carvell*, 900 S.W.2d at 29) (emphasis added); *accord Tanaka*, 980 S.W.2d at 213.

As previously discussed, the evidence in this case revealed that on December 13, 1993, Dunlap discovered a discrepancy in a deposit ticket accompanying the statement for his personal bank account. The deposit ticket showed that checks in the amount of $160.87 and $544.72 were deposited, that $1000 in cash was received, and that a total of $705.59 was deposited. Dunlap observed that the numbers on the ticket "didn't add up," and he questioned how someone could have received $1000 in cash while still making a net deposit of $705.59. Dunlap recognized Barbara Brown's handwriting on the deposit ticket, but he did not believe that Brown had written the $1000 figure in the cash received space. Consequently, Dunlap went to the bank and asked bank employee Sammy Morello to explain the discrepancy. Upon returning to the bank on December 16, 1993, as directed by Morello, Dunlap learned that a check for $1,160.87, and not $160.87, was deposited, that the $544.72 check was stolen from the medical practice, and that the person making the deposit did receive $1000 in cash. This discovery led Dunlap to confront Barbara Brown, who admitted the theft of $1000 in cash. In the weeks following December 16, 1993, Dunlap's own audit of the medical practice account revealed that Brown had employed similar practices to engage in a pattern of embezzlement from the medical practice since January 1985.

From this evidence, we conclude that a reasonable person could find that on December 13, 1993, Dunlap neither knew nor should have known that the Plaintiffs had sustained an injury as a result of the Defendants' wrongful conduct. Although Dunlap knew on that date that a discrepancy existed relative to a deposit to his personal banking account, Dunlap did not know until December 16, 1993, that the Plaintiffs in fact had sustained a loss. Moreover, even on December 16, 1993, Dunlap did not know that the Plaintiffs' loss was somehow related to the Defendants' wrongful conduct. Although Dunlap knew on that date that the Plaintiffs had sustained

a loss as a result of Barbara Brown's conduct, he did not know until he performed his own audit of the medical practice account in the ensuing weeks that the loss was not an isolated incident but, rather, represented part of a pattern of conduct by Brown which had gone undetected by the Defendants over a period of years.[3]

In urging this court to affirm the trial court's judgment, the Defendants argue that Dunlap should have known of Barbara Brown's embezzlement on December 13, 1993. In support of this argument, the Defendants point to the facts of Brown's prior embezzlement from the medical practice during the early 1980's, Dunlap's suspicion in late 1993 that he was not receiving all of his mail, and a theft of prescription cocaine from his office in 1991. In our view, however, these are arguments which should be made to the finder of fact at trial. At this point in the proceedings, these facts do not establish as a matter of law that on December 13, 1993, or even December 16, 1993, Dunlap either knew or should have known that the Plaintiffs had sustained a loss as a result of the Defendants' wrongful conduct. Accordingly, we reverse the summary judgment entered by the trial court, and we remand for further proceedings.

In reversing the trial court's summary judgment, we point out that situations may exist when a plaintiff does not possess sufficient information to commence the running of the limitations period but, at the same time, he does possess sufficient information to trigger a duty on his part to determine, with due diligence, whether he has been harmed by another's wrongful conduct. *See, e.g.*, *Terry v. Niblack*, 979 S.W.2d at 586-87; *see also Wyatt v. A-Best Co.*, 910 S.W.2d 851, 856 (Tenn. 1995). This case may present such a situation. When viewed in the light most favorable to the Plaintiffs, the information learned by Dunlap on December 13, 1993, and on December 16, 1993, did not commence the running of the limitations period as to the Defendants, but it did trigger a duty on Dunlap's part to determine, with due diligence, whether facts existed to support a legal cause of action against the Defendants. If Dunlap's testimony is believed, this is precisely the duty he undertook in the weeks following December 16, 1993.

---

[3]In this regard, we note that the negligence complained of in this case was that the Defendants failed to follow accepted accounting procedures and practices in their handling of the medical practice account and that, as a result, they failed to discover Barbara Brown's embezzlement. The theft which Dunlap discovered on December 16, 1993, was so recent that, even with the exercise of due care, the Plaintiffs' accountant might not have had the time or opportunity to discover it.

On appeal, Defendants Richard Ayers and Gauldin & Ayers insist that the trial court's summary judgment should be affirmed as to them because the evidence showed that, after Ayers informed Dunlap of Barbara Brown's embezzlement in January 1985, Dunlap did not allow Brown to handle money again until 1988 and, further, that Dunlap did not depend upon Ayers to detect any embezzlement by Brown after October 1986, when Ayers and his accounting firm ceased performing services for the Plaintiffs. We reject this argument because, when viewed in the light most favorable to the Plaintiffs, the evidence demonstrated that, although Brown was not supposed to handle money for the medical practice between 1985 and 1988, Brown had sufficient contact with the medical practice's funds to begin embezzling again as early as January 1985. The evidence also demonstrated that Brown's practice of embezzling funds from the medical practice by substituting checks for cash went undetected by Ayers and the other accountants until Dunlap himself learned of it in December 1993. Defendants Ayers and Gauldin & Ayers provided accounting services to the Plaintiffs between January 1985 and October 1986, which covered approximately twenty months of the nine-year period in dispute in this case.

The Defendants also have raised an issue on appeal, contending that the one-year limitations period began to run, at the latest, on December 16, 1993, and, thus, the Plaintiffs' action still was not timely commenced because the Plaintiffs failed to file the required summonses when they filed their original complaint on December 16, 1994. At the time the Plaintiffs filed their complaint, rule 3 of the Tennessee Rules of Civil Procedure provided that "[a]ll civil actions are commenced by filing a complaint *and summons* with the clerk of the court." T.R.C.P. 3 (as amended effective July 1, 1992) (emphasis added). In decisions construing this version of rule 3,[4] this court has held that an action is not commenced for statute of limitations purposes until the plaintiff has filed both a complaint and a summons.

In *Cary v. Bourne*, No. 02A01-9511-CV-00263, 1997 WL 585750, at *1 (Tenn. App. Sept. 23, 1997), for example, Cary's cause of action accrued on May 26, 1994. Cary filed his

_____

[4]Rule 3 no longer requires the plaintiff to file a summons in addition to a complaint. *Cary v. Bourne*, No. 02A01-9511-CV-00263, 1997 WL 585750, at *5 n.3 (Tenn. App. Sept. 23, 1997) (citing T.R.C.P. 3 advisory commission comment). The rule was amended in 1997 to provide that "[a]ll civil actions are commenced by filing a complaint with the clerk of the court." T.R.C.P. 3.

original complaint on May 3, 1995, but he did not file a summons as required by rule 3 until May 30, 1995. *Cary v. Bourne*, 1997 WL 585750, at \*5. This court held that Cary's action was not commenced until May 30, 1995, and, thus, that the action was barred by the one-year statute of limitations applicable to medical malpractice claims. *Id*. Similarly, in *Johnson v. Fortunes Untold, Inc.*, No. 03A01-9710-CV-00464, 1998 WL 379186, at \*1 (Tenn. App. July 8, 1998), the plaintiffs' cause of action accrued on May 2, 1996. The plaintiffs filed their complaint on May 2, 1997, but they did not file the summons until May 5, 1997. *Johnson*, 1998 WL 379186, at \*1. This court held that the plaintiffs' action was not commenced until May 5, 1997, and, thus, that it was barred by the one-year statute of limitations for personal injury claims. *Id*.

Insisting that the Plaintiffs' cause of action in this case accrued, at the latest, on December 16, 1993, the Defendants seek to draw a parallel between the foregoing cases and the present one. The Plaintiffs filed their original complaint on December 16, 1994. Unlike the complaint, the summonses failed to indicate when they were filed because they did not contain the court clerk's endorsement as to the date and hour of the filing as required by rule 5.06. *See* T.R.C.P. 5.06. The summonses merely indicated that they were issued on December 27, 1994. Relying on the foregoing cases, therefore, the Defendants contend that the Plaintiffs in this case did not timely commence their action because they did not file the summonses when they filed their complaint on December 16, 1994.

We conclude that this argument is without merit. As previously discussed, we decline to hold as a matter of law that the one-year limitations period began to run on December 16, 1993. Moreover, contrary to the Defendants' contention, the record contains no evidence that the summonses were not filed when the original complaint was filed on December 16, 1994. Dunlap filed an affidavit in this case which, when construed in the light most favorable to the Plaintiffs, indicated that Dunlap delivered both the original complaint and the summonses to the court clerk's office on December 16, 1994, and no evidence was submitted to contradict this affidavit. Although the summonses failed to indicate a filing date of December 16, 1994, they also did not contain any other filing date which would have contradicted the Plaintiffs' assertion that the summonses were filed on December 16, 1994. For whatever reason, the court clerk did not endorse the summonses by indicating thereon the date and hour the summonses were filed.

In contending that the Plaintiffs did not properly file the summonses with the complaint on December 16, 1994, the Defendants focus on the following language found in rule 5.06:

> *The filing of pleadings and other papers with the court as required by [the Tennessee Rules of Civil Procedure] shall be made by filing them with the clerk of the court*, except that the judge may permit the papers to be filed with him, in which event he shall note thereon the filing date and forthwith transmit them to the office of the clerk. *The clerk shall endorse upon every pleading and other papers filed with him in an action the date and hour of the filing*. . . .

T.R.C.P. 5.06 (as amended effective July 1, 1993) (emphasis added). Citing this language,[5] the Defendants contend that the summonses were not filed on December 16, 1994, because they failed to contain the clerk's endorsement indicating December 16, 1994, as the date of filing.

We disagree with the Defendants' contentions on this issue. A pleading or other paper "is deemed filed when [it is] handed to a person in the clerk's office to receive it, and the failure of the clerk or deputy to properly mark it filed should in no way prejudice the party filing it." *Rush v. Rush*, 37 S.W. 13, 14 (Tenn. 1896) (citing *Montgomery v. Buck*, 25 Tenn. (6 Hum.) 416 (1846)). Stated another way, if a litigant timely places a pleading or other paper in the possession of a court clerk employee, the employee's failure to mark it filed is not fatal to the litigant's subsequent argument that the paper was timely filed. *See Fry v. Cermola*, No. 03A01-9507-JV-00246, 1996 WL 30903, at *3 (Tenn. App. Jan. 29, 1996); *City of Gatlinburg v. Bell*, No. 03A01-9412-CV-00431, 1995 WL 114186, at *3 (Tenn. App. Mar. 17, 1995). In construing virtually identical language found in the Tennessee Rules of Criminal Procedure, our Court of Criminal Appeals has indicated that "the receipt of the pleading by the clerk constitutes the filing and not the clerk's endorsement of the date and time." *State v. South*, No. 02C01-9502-CR-00051, 1997 WL 227988, at *2 n.1 (Tenn. Crim. App. May 7, 1997) (construing Tenn. R. Crim. P. 49(c)).

_____

[5]The cited language of rule 5.06 has changed slightly since this lawsuit began. *See* T.R.C.P. 5.06. According to the compiler's notes to the Michie edition of the rules, our supreme court made gender-neutral amendments to rule 5 and other rules in 1995.

We hold that the summonses in this case were filed within the meaning of rule 5.06 when Dunlap delivered them to an employee of the court clerk's office. The only evidence in the record on this issue indicates that this delivery took place on December 16, 1994, when Dunlap also delivered the original complaint. Accordingly, we conclude that the Plaintiffs timely commenced this action on December 16, 1994, despite the court clerk's failure to mark the summonses filed on that date.

The trial court's order granting the Defendants' motions for summary judgment is reversed, and this cause is remanded for further proceedings consistent with this opinion.[6] Costs of this appeal are taxed to the Defendants, for which execution may issue if necessary.

_____
FARMER, J.


_____
CRAWFORD, P.J., W.S. (Concurs)


_____
HIGHERS, J. (Concurs)

---

[6]In light of our reversal of the trial court's judgment, we pretermit the Plaintiffs' remaining issue concerning the trial court's denial of their motion to alter or amend the judgment. *See* T.R.C.P. 59.04.