**AMERACCOUNT CLUB, INC.,**
**Plaintiff-Petitioner,**

v.

**T. Robert HILL, Larry C. Sanders, Palmer E. Miller and Lundy W. Daniel, Individually and as Partners d/b/a Hill, Sanders, Miller and Daniel, Defendants-Respondents.**

Supreme Court of Tennessee.

May 4, 1981.

Lloyd S. Adams, Jr., Harold W. McLeary, Jr., Humboldt, for plaintiff-petitioner.

Albert C. Harvey, Memphis, W. Stanworth Harris, Victor F. Schneider, Jackson, for defendants-respondents.

OPINION

BROCK, Justice.

This is an action for damages by a client against a lawyer based upon allegations that the lawyer's representation fell below the standard of reasonable competence required of attorneys in the circumstances here disclosed. The Court of Appeals has affirmed the decision of the trial court granting a summary judgment against the plaintiff and in favor of the attorney on the ground that this action was not filed within the one year period of limitations allowed by T.C.A., § 28–304, which in pertinent part, provides:

"Actions and suits against attorneys for malpractice, whether said actions are based in contract or tort, ... shall be commenced within one year after cause of action accrued."

We granted discretionary review to consider the question: When does the statute of limitations begin to run on an action against an attorney for alleged malpractice in performing an obligation of representation such as that undertaken in this case?

In 1974, the plaintiff, Ameraccount Club, Inc., a corporation with its principal place of business located in Jackson, Tennessee, employed the defendant attorneys, whose offices were also located in Jackson, to incorporate its business and generally to give advice in connection with the establishment of a financial service program for use by banks, savings and loan associations and other financial institutions. Thus it came about that the plaintiff sought to have a service mark "Ameraccount Club, Inc." and a logo registered with the United States Patent Office. The defendant attorneys were employed to handle the filing and prosecution of plaintiff's claim for such registration. The defendant attorneys submitted the plaintiff's application in December, 1974, but learned, upon inquiry, on March 3, 1975, that the application was incomplete in that insufficient number of copies of the logo had been submitted. On March 13, 1975, the defendant attorneys submitted to the Patent Office additional copies of the logo as required. Thus, this

latter date, March 13, 1975, was the filing date assigned to the application by the Patent Office.

The defendant attorneys did not conduct a search of the Patent Office records to determine whether there were pending applications for service marks similar to that requested by the plaintiff or to determine whether there had been prior use of similar marks. But, on August 13, 1975, the Patent Office notified defendant Sanders that an application for registration of a similar logo had been filed on February 28, 1975, by a Florida savings and loan association and that because of prior filing the Florida logo would have precedence over the plaintiff's logo which was given the official filing date of March 13, 1975. Attached to this letter from the Patent Office was a photocopy of the drawing of the Florida application and information that the service mark ("First Ameraccount") had been used in interstate commerce on October 1, 1974. The plaintiff's proposed service mark had been first used in November, 1974. This letter of August 13, 1975, from the Patent Office to the defendant attorneys stated:

"Since the effective filing date of the instant application is subsequent to the filing date of the other pending application, the latter, if and when it matures into a registration, will be cited against the instant application."

This letter continued:

"If applicant desires to prosecute this application further, the informalities listed below should be corrected."

This instruction was followed by a list of some suggested corrections to be made on the application.

A copy of this August 13, 1975, letter from the Patent Office was forwarded to the plaintiff and received by it on August 15, 1975. The plaintiff's shareholders had a meeting forthwith (before August 27) and agreed that the defendants had handled this matter negligently. The plaintiff's President, Carl Smith, testified:

"Q. Was it the consensus of your meeting and the opinion of those who met with you that there was negli-gence on the part of Mr. Sanders and Mr. Hill as a result of the way this thing was handled?

"A. Definitely."

On September 2, 1975, President Smith met with the defendants, his attorneys, at which time the defendants admitted that they had not made a search of the Patent Office's records before filing plaintiff's application; neither had they determined in advance of filing how many copies of the application and logo were required to be filed. On this same occasion, the defendants advised President Smith to employ a Washington, D.C. attorney to further pursue the application.

The plaintiff did retain a Washington attorney in late September, 1975, but the prior registration by the Florida Savings and Loan Association was never contested in an opposition proceeding before the Patent Office nor did the plaintiff make offers to "share" the service mark with the Florida association.

On April 27, 1976, the United States Patent Office finally refused to register the plaintiff's service mark. This action was filed on August 27, 1976, contending that the defendant attorneys had negligently represented the plaintiff in attempting to have its service mark and logo registered.

Concluding that the one year statute of limitations, T.C.A. § 28–304, had run prior to the filing of this suit, the trial court granted the motion for summary judgment filed by all defendants.

The Court of Appeals, citing our opinion in *Teeters v. Currey*, Tenn., 518 S.W.2d 512 (1974), concluded that the one year statute of limitations had run prior to the filing of this suit, finding that "it is clear that he, plaintiff's President, Carl Smith, and the other shareholders ... considered the defendants guilty of negligence prior to August 27, 1975." The rationale of the court's decision is as follows:

"We find no dispute in the material facts of this case. It is the opinion of this court that if there was negligence on behalf of the defendants, this negligence was known by the shareholders and offi-

cers of the plaintiff corporation for a period of more than one year before the filing of this lawsuit."

In *Teeters v. Currey, supra,* we did hold in that medical malpractice action that the statute of limitations began to run when the patient discovered, or in the exercise of reasonable care and diligence for her own health and welfare, should have discovered the resulting injury. 518 S.W.2d at 517. We continue to adhere to our decision in *Teeters,* but we think that the appellate court misapplied its rationale in the instant case. The Court of Appeals erred in holding that the plaintiff's cause of action accrued and the statute of limitations began to run when the plaintiff became aware of the negligence of the defendant attorneys; still more was required, viz., damage or injury to the plaintiff resulting from that negligence.[1]

In *McCroskey v. Bryant Air Conditioning Company,* Tenn., 524 S.W.2d 487, 491 (1975), we held with respect to an action for damages based upon a products liability theory that "the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered."

The reasoning and rule applied in *McCroskey* and in *Teeters* applies in the instant case. Although the plaintiff may have been aware of the defendant attorneys' "negligence" as early as August 18, 1975, or September 2, 1975, no damage or injury resulted to the plaintiff by reason of that "negligence" until on or about April 27, 1976, when the United States Patent Office rejected the plaintiff's application. *See, Roberts v. Berry,* 541 F.2d 607, 610 (6th Cir. 1976).

In *Bland v. Smith,* 197 Tenn. 683, 277 S.W.2d 377 (1955), this Court without discussion, held that a cause of action against an attorney for the negligent handling of a divorce suit accrued ". . . from the date of plaintiff's injuries, . . . upon date of the

entry of the final decree in the chancery court . . . ." 277 S.W.2d at 380–81.

The United States Court of Appeals for the Sixth Circuit recently decided a case arising in Tennessee which dealt with the question here under consideration. *Woodruff v. Tomlin,* 511 F.2d 1019 (6th Cir. 1975). The court there applied Tennessee law in a case of alleged attorney malpractice wherein ineffective and inadequate representation in a personal injury trial was alleged. The court reversed a decision of the District Court which had granted summary judgment to the defendant attorney upon grounds that the statute of limitations had run. The District Court had held that the cause of action against the attorneys had accrued at the time of each alleged negligent act or omission at the trial or in pre-trial proceedings. In reversing the District Court, the appeals court held that the plaintiff's cause of action did not accrue until ". . . the case was finally terminated and a final judgment rendered." 511 F.2d at 1020.

In *Biberstine v. Woodworth,* 406 Mich. 275, 278 N.W.2d 41 (1979), an attorney negligently failed to schedule a client's debt in a petition for bankruptcy and in the ensuing action for malpractice the court held that "the statute of limitations started to run at the time the client was discharged in bankruptcy, since until then the attorney could have petitioned the bankruptcy court to amend the petition and the client would not have had a claim for malpractice." *See also, Hodge v. Service Machine Company,* 438 F.2d 347 (6th Cir. 1971); *Pioneer Nat. Title Ins. Co. v. Child, Inc.,* Del., 401 A.2d 68 (1979); *Chamberlain v. Smith,* 72 Cal. App.3d 835, 140 Cal.Rptr. 493 (1977); *Heyer v. Flaig,* 70 Cal.2d 223, 74 Cal.Rptr. 225, 449 P.2d 161 (1969); *Fort Myers Seafood Packers, Inc. v. Steptoe and Johnson,* 381 F.2d 261 (D.C.1967), 18 A.L.R.3d 974. In the *Chamberlain* case, *supra,* the California court used the following language, which we approve:

until he knows all of the injurious effects or consequences of an actionable wrong.

---

1. Of course, as we held in *Taylor v. Clayton Mobile Homes, Inc.,* Tenn., 516 S.W.2d 72 (1974), a plaintiff cannot be permitted to wait

"A cause of action against an attorney for professional negligence accrued as of the date on which the negligence became irremediable."

Applying the foregoing principles to the facts here presented, we hold that the Court of Appeals and the trial court erred in sustaining summary judgment for the defendants upon the ground that the statute of limitations of one year had barred the plaintiff's right of action. The judgments of the lower courts are reversed and the cause is remanded to the trial court for appropriate further proceedings consistent with this opinion. Costs are taxed against defendants-respondents.

HARBISON, C. J., and FONES and COOPER, JJ., concur.