IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
_____

**BRADSON MERCANTILE, INC.,**

　　　Plaintiff-Appellant,

Vs.

Shelby Circuit No. 79449-1
C.A. No. 02A01-9710-CV-00272

**JOSEPH H. CRABTREE, JR.,**
**Individually; SHUTTLEWORTH,**
**SMITH, McNABB & WILLIAMS,**
**A Partnership; KENNETH R.**
**SHUTTLEWORTH, Individually;**
**GARY K. SMITH, Individually;**
**LELAND McNABB, Individually;**
**BRUCE E. WILLIAMS, Individually;**
**ROBERT L. SABBATINI, P.C.;**
**and ROBERT H. HARPER, Individually,**
**as Partners of the Partnership,**

FILED

**February 16, 1999**

**Cecil Crowson, Jr.**
Appellate Court Clerk

　　　Defendants-Appellees.
_____

FROM THE SHELBY COUNTY CIRCUIT COURT
THE HONORABLE WILLIAM B. ACREE, JR.


Wyatt, Tarrant, & Combs; Glen G. Reid, Jr. and
Ross Higman of Memphis
For Plaintiff-Appellant

Glassman, Jeter, Edwards and Wade, P.C.
William M. Jeter of Memphis
For Defendants-Appellees


*AFFIRMED AND REMANDED*

Opinion filed:


　　　　　　　　　　　　　　　　　　　**W. FRANK CRAWFORD,**
　　　　　　　　　　　　　　　　　　　**PRESIDING JUDGE, W.S.**


**CONCUR:**

**HEWITT P. TOMLIN, JR., SENIOR JUDGE**

**DAVID R. FARMER, JUDGE** (Not Participating)

　　　This case is before the Court on remand from the Supreme Court for this Court "to

reconsider it's opinion in light of [the Supreme Court's] recent decision in ***John Kohl & Co.***

***P.C. v. Dearborn & Ewing*.**" The Court, pursuant to the Supreme Court's mandate, has

reconsidered the case and withdraws its previously filed opinion.

This is a legal malpractice case. Plaintiff/Appellant Bradson Mercantile, Inc., (Bradson) appeals the trial court's order granting summary judgment on the ground that the action is barred by the statute of limitations.

During the late 1980s and early 1990s, Bradson, as a subcontractor, provided labor for two construction projects in Shelby County: the Mapco project[1] and the Shelby Tissue project. When it was not paid for its participation in these projects, Bradson retained Defendant/Appellee Joseph H. Crabtree of the law firm Defendant/Appellee Shuttleworth, Smith, McNabb & Williams (Law Firm)[2] as legal counsel in 1992. Bradson alleges that it hired Crabtree to collect the sums due and to perfect mechanic's and materialman's liens on the real property involved in the projects. At some point later, Bradson learned that the lien on the Mapco project was never perfected. In an attempt to resolve the dispute without litigation, the parties entered into a "Tolling Agreement" on October 14, 1993. This agreement states in relevant part:

> Bradson may have and asserts a claim against Crabtree and the Law Firm for breach of contract, legal malpractice, and/or negligence arising out of the representation by Crabtree and the Law Firm of Bradson relating to Bradson's claim against MT Mechanical Contractors, Inc. and the perfection of a Mechanics and Materialmen's Lien involving property of MAPCO Petroleum, Inc. ("the Representation"). Bradson has advised Crabtree and the Law Firm of its intention to file a lawsuit against them; and
>    Crabtree and the Law Firm have advised their malpractice insurance carrier of the claim and desire additional time to settle or reconcile the claim of Bradson; and
>    In order to provide the parties with a period of time to endeavor to settle or reconcile the issues, Crabtree and the Law Firm agree to extend and waive and otherwise toll any and all limitation periods or statutes of repose, both legal and equitable, including but not limited to TCA §28-3-104, applicable to any and all causes of action which Bradson may have or may assert against Crabtree and/or the Law Firm and/or its Partners, agents and employees arising from the Representation;
>    NOW, THEREFORE, in consideration of Bradson forebearing until February 14, 1994, from taking any action against Crabtree, the Law Firm, its agents, employees or Partners, arising out of the Representation above referred to, Crabtree, individually, the Law Firm, its Partners, agents and employees hereby covenant and agree that they will not, in any way, in response to or in defense of any action brought against them or any of them by Bradson relating to the Representation raise the defense of any statute of limitation or of repose (legal or equitable) to any claim asserted by Bradson against Crabtree and/or the Law Firm, its Partners, agents and/or employees relating to the Representation.

Meanwhile, Law Firm had filed an action on behalf of Bradson with regard to the Shelby

---

[1] This project was also referred to as the "M.T. Mechanical project."

[2] "Law Firm" will be used to refer to all individual defendants and the firm.

Tissue project. In addition, the contractor for the Shelby Tissue project filed a Lien Creditors' Bill on behalf of several lien creditors, including Bradson. Subsequently, Bradson discovered that Law Firm may have failed to comply with statutory requirements for the perfection of the Shelby Tissue lien.[3] Bradson's Complaint alleges that although a Notice of Lien was filed in the Shelby County Register's office, Law Firm "failed to prepare and serve a written notice that the lien was being claimed within the time prescribed by T.C.A. § 66-11-115(b)." In addition, Bradson's Complaint also alleges that Law Firm neglected to timely "prepare and serve a Notice of Nonpayment by registered mail to Shelby Tissue and the property owner in accord with T.C.A. § 66-11-145."

On February 14, 1994, the parties entered into an "Extension of Tolling Agreement." This agreement states in relevant part:

> This Agreement is for the purpose of further extending the Tolling Agreement heretofore entered into by and between the parties on October 14, 1993. . . .
>
> The Parties have endeavored to settle or reconcile certain issues that may exist as heretofore delineated in the original Tolling Agreement and, because of additional matters that may have arisen, the parties are desirous of extending the original Tolling Agreement through May 6, 1994, pursuant to the terms and conditions of the original Tolling Agreement. All other provisions in the original Tolling Agreement shall continue to be applicable, with the tolling period being extended from February 14, 1994 through and including May 6, 1994.

Bradson asserts that it was the intent of the parties to incorporate the potential Shelby Tissue project claim as part of the original Tolling Agreement.

In March 1994, the parties settled the Mapco dispute. The Release and Indemnification Agreement specifically excludes the Shelby Tissue dispute and states: It is acknowledged, understood and agreed by Insurers and Lawyers that Bradson does hereby specifically reserve any and all rights and claims it may have against the Law Firm of Shuttleworth, Smith, McNabb & Williams, it [sic] partners, associates and employees including, but not limited to, claims for legal malpractice relating to or arising out of the representation of Bradson by said Lawyers relating to a project commonly identified as "Shelby Tissue" on which Lawyers agreed to and did perform and render certain services and certain work and in which the said Lawyers and Law Firm represented Bradson. . . . All parties to this Release further acknowledge that a claim has heretofore been made with regard to the "Shelby Tissue" representation and that that claim as well as any and all other claims which Bradson has or may have are not being released by this Agreement.

---

[3] Bradson's brief states that on December 17, 1993, Shelby Tissue filed a Motion to Dismiss in this suit, asserting that Bradson failed to comply with the requirements of the lien statutes. Bradson's brief also includes a letter written December 29, 1993 from Bradson's new counsel to counsel for Law Firm in which Bradson states its intention to pursue a legal malpractice action if necessary for the Shelby Tissue liens. These documents, however, were not included in the record and, thus, we do not consider them on appeal. Tenn. R. App. P. 24; *State v. Thompson*, 832 S.W.2d 577, 579 (Tenn. Crim. App. 1990).

On June 11, 1996, an order was entered in the underlying Shelby Tissue action holding that because Bradson had failed to perfect its mechanic's and materialmen's lien, it had no protection under the Lien Creditors' Bill. Bradson timely filed a Notice of Appeal from this order.

On June 26, 1996, Bradson filed the legal malpractice Complaint against Law Firm. Both parties filed motions for summary judgment. Finding that the statute of limitations expired on May 6, 1994, the trial court granted summary judgment to the Law Firm.[4] Bradson has appealed, and presents three issues for review, as stated in its brief:

> 1. Did the Circuit Court err in allowing the law firm to raise the statute of limitations as a defense when the law firm had expressly waived the statute of limitations in the Tolling Agreement and the Extension of Tolling Agreement.
>
> 2. Did the Circuit Court err in granting summary judgment to the law firm on the basis of the statute of limitations when the law firm further indicated its intention to waive the statute in the Release and Indemnification Agreement?
>
> 3. Did the Circuit Court err in granting summary judgment to the law firm on the basis of the statute of limitations when there was no evidence in the record to establish when the cause of action accrued or the statute of limitations ran?

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. ***Id.*** In ***Byrd v. Hall***, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

***Id.*** at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn

---

[4] Although the trial court did not explain its reasoning, May 6, 1994 was the date through which the Tolling Agreement was extended.

from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

The first two issues presented for review require the interpretation of the agreements referred to. The cardinal rule in the construction of contracts is to ascertain the intent of the parties. *West v. Laminite Plastics Mfg. Co.*, 674 S.W.2d 310 (Tenn. App. 1984). If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1955). The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn. 1975). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. *Ballard v. North American Life & Cas. Co.,* 667 S.W.2d 79 (Tenn. App. 1983). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. *Sutton v. First Nat. Bank of Crossville,* 620 S.W.2d 526 (Tenn. App. 1981). Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made. *McKee v. Continental Ins. Co.*, 191 Tenn. 413, 234 S.W.2d 830, 22 ALR2d 980 (1951).

We have examined the tolling agreement and the agreement for the extension thereof. In neither agreement do we find reference made to the Shelby Tissue project, nor do we find that the language makes any indication that the Shelby Tissue project was intended to be included in the tolling agreement relied upon by Bradson. As to the Release and Indemnification Agreement, the usual and ordinary meaning of the language used merely indicates an intention to make it clear that the release does not include any claim relating to the Shelby Tissue project. We find no language in this agreement that would indicate an intention to waive or toll any statute of limitations.

Appellant's first two issues are without merit.

The third issue for review is whether the trial court erred in granting summary judgment on the basis that Bradson's claim was barred by the statute of limitations.

5

An action for legal malpractice must be commenced "within one (1) year after the cause of action accrued." T.C.A. § 28-3-104 (a)(2) (Supp. 1997). *Carvell v Bottoms*, 900 S.W.2d 23 (Tenn. 1995), is the seminal case in Tennessee involving the accrual of a legal malpractice cause of action. In *Carvell*, the plaintiffs retained the legal services of the defendants for the purpose of selling a real estate parcel to Ms. Roaby Baxter. Although a preliminary title opinion drafted by the defendants indicated the existence of a pipeline easement across the property, the warranty deed prepared by the defendants did not mention the easement. A few years after purchasing the property, Ms. Baxter filed suit against the Carvells upon discovering the existence of the easement. The plaintiffs were put on notice at some point soon thereafter that the defendants may have negligently drafted the warranty deed. In January of 1989, a trial court entered an order on a jury verdict in favor of Ms. Baxter.[5] Both parties appealed, but the trial court's judgment was affirmed in March of 1990. The plaintiffs proceeded to bring a legal malpractice suit against the defendants in May of 1990. *Id.* at 24-25.

The plaintiffs argued that the cause of action did not accrue until the Court of Appeal's decision was filed in March of 1990, claiming that their injury did not become "irremediable" until all of their possible appeals had been exhausted. *Id.* at 29. The Supreme Court rejected the plaintiffs' argument and held that although the plaintiffs' injury need not be "irremediable" there must be a "legally cognizable" or "actual" injury.[6] *Carvell*, 900 S.W.2d at 29-30. The Court further stated that "a plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Id.* at 29 (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)). Applying this standard, the Court noted that the Carvells should have known that they had sustained an injury as a result of the lawyer's negligence when they were sued by Baxter in 1986. *Carvell*, 900 S.W.2d at 29.

Thus, a cause of action for legal malpractice accrues when: 1) the defendant's negligence causes the plaintiff to suffer a legally cognizable or actual injury; and 2) the plaintiff knows "or in the exercise of reasonable diligence should have known that this injury was caused by defendant's negligence." *Id.* at 28, 30. In the instant case, there is little question that Bradson knew or should have known of a potential cause of action against the Defendants more than one year before the Complaint was filed. The Release and Indemnification Agreement executed in May of 1994 expressly demonstrates that Bradson had knowledge of this potential claim.[7] The more crucial issue involves the date

---

[5] The trial court, however, suggested a remittitur.

[6] The *Carvell* Court stated that term, "irremediable," used by the Court in *Ameraccount Club, Inc. v. Hill*, 617 S.W.2d 876, 879 (Tenn. 1984), was "pure dicta." *Carvell,* 900 S.W.2d at 29-30.

[7] The parties also refer to documents not in the record indicating that Bradson had knowledge of the potential claim as early as December of 1993. *See* Footnote 3.

at which Bradson suffered from an "actual injury" or a "legally cognizable injury." *Id.* at 30.

Before *Carvell,* Tennessee courts struggled with the issue of the accrual of a legal malpractice cause of action on numerous occasions. In *Ameraccount Club, Inc. v. Hill*, 617 S.W.2d 876 (Tenn. 1981), the plaintiff corporation employed the defendant attorneys to register a service mark and logo with the United States Patent Office. After learning in March of 1975 that their application filed December, 1974, was incomplete, the defendants completed the application and a registration date of March 13, 1975 was assigned. The defendants, however, failed to conduct a search of whether any other applications for similar service marks had been submitted. By letter of August 13, 1975, the plaintiff was notified that another company had submitted an application for a similar service mark in February of 1975. Although the other company was conferred precedence, the plaintiff was notified that it retained the right to contest this conferral. Shortly thereafter (before August 27, 1975), the plaintiff conducted a shareholders' meeting in which the members agreed that the defendants had acted negligently. The plaintiff never contested the Patent Office's decision and was notified on April 27, 1976 that the Patent Office had officially refused its application. The plaintiff filed a legal malpractice suit against the defendants on August 27, 1976. *Id.* at 876-77.

The Supreme Court rejected the defendants' argument that the cause of action accrued at the point that the plaintiff discovered the defendants' negligence. Instead, the Court held that "more was required, viz., damage or injury to the plaintiff resulting from that negligence," and found that the plaintiff did not suffer an injury from the alleged negligence until the Patent Office rejected its application on April 27, 1996. *Id.* at 878. The Court cited approvingly the notion that the cause of action accrues at the point at which the alleged negligence becomes "irremediable." *Id.* at 879 (quoting *Chamberlain v. Smith*, 72 Cal.App.3d 835, 140 Cal.Rptr. 493 (1977)).

In *Security Bank & Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860 (Tenn. 1983), a town's local bond counsel assisted in the issuance of revenue bonds that were personally guaranteed by two individuals. The bonds defaulted on October 1, 1974, and it was subsequently discovered that the bond issue may have been fraudulently conceived by the two individual guarantors. A few months later, the town and the trustee bank filed suit against the two guarantors,[8] seeking recovery for the failure of the bond issue. In the Summer of 1975, letters were written to the trustee bank recommending that a suit be brought on behalf of the bondholders against certain parties, including the bond attorneys. A legal malpractice suit was not brought against these attorneys, however, until November of 1976. *Id.* at 861-63.

The Supreme Court rejected the plaintiffs' argument that the cause of action did not accrue until the suit against the guarantors was concluded. Citing *Ameraccount, supra,* the Court stated:

---

[8] A corporation, Fabricating, Inc., was also listed as a defendant. This suit was eventually dismissed, but a different suit was later filed in Texas.

> Obviously, negligence without injury is not actionable; hence, the statute of limitations could not begin to run until the attorney's negligence had resulted in injury to the plaintiff. In the instant case, the injury to the bondholders occurred on October 1, 1974, *when the bonds defaulted*. There is no merit whatever in the plaintiffs' argument that their injury did not occur until the suit against the guarantors in Texas was concluded. A plaintiff cannot be permitted to wait until he knows all of the injurious effects as consequences of an actionable wrong.

*Security Bank*, 673 S.W.2d at 864-65 (internal citation omitted) (emphasis in original).

In *Chambers v. Dillow*, 713 S.W.2d 896 (Tenn. 1986), the plaintiff hired the defendant attorney to represent him in a suit against the county. The plaintiff's suit against the county was dismissed in March of 1981 for failure to prosecute. After being notified of this dismissal in March of 1982, the plaintiff hired another attorney, who filed a Tenn. R. Civ. P. 60.02 motion to set aside the order of dismissal. Although this motion was granted, the trial court ultimately dismissed the suit for the second time in April of 1983. The plaintiff filed a malpractice suit against the defendant and the defendant's law firm in October of 1983. *Id.* at 896-97.

The plaintiff argued that his cause of action did not accrue until the date of the second dismissal. The Supreme Court, however, found that the plaintiff suffered "irremediable" injury on the date of the first order of dismissal in March of 1981, since this dismissal qualified as "an adjudication upon the merits" in accordance with Tenn. R. Civ. P. 41.02 (3).[9] *Chambers*, 713 S.W.2d at 898. The Court stated:

> Where as here the client has knowledge of the lawyer's negligence, of the termination of his lawsuit, of the legal consequences of that termination, and has employed another lawyer to prosecute his malpractice claim, he cannot defer the irremediable injury date by futile efforts to revive a legally dismissed lawsuit.

*Id.* The Court also noted that the plaintiff had suffered "sufficient" tangible injury at the point of his discovery that the initial suit was dismissed: namely he was liable for the court costs of his dismissed suit, he had lost at least the interest on anticipated money recovery, and he was faced with the prospect of incurring attorney's fees for the impending legal malpractice suit. *Id.* at 898-99. *See also Bland v. Smith*, 197 Tenn. 683, 277 S.W.2d 377 (1955).

This Court considered this issue in 1986 in *Memphis Aero Corp. v. Swain*, 732 S.W.2d 608 (Tenn. App. 1986). The plaintiff in *Memphis Aero* hired the defendant attorney to collect the balance of an account owed by Argonauts, Inc.. The defendant proceeded to file a civil warrant and an attachment for an aircraft owned by Argonauts that was stored on the plaintiff's premises. The plaintiff's attachment was sustained when Argonauts failed to appear, and the aircraft was sold to satisfy the judgment. One month later, Argonauts notified the defendant that the attachment was wrongfully obtained since no service of process was ever received by Argonauts. Consequently, Argonauts filed suit for damages resulting from the wrongful attachment against the defendant and the plaintiff in August of 1978. A 1982 order by the trial court dismissing the suit was reversed by the Court of Appeals and,

---

[9] The Court, nevertheless, held that the cause of action did not accrue until the date that the plaintiff discovered that the initial suit was dismissed. *Id.*

ultimately, Argonauts was awarded a judgment in December of 1983. Also in December of 1983, the plaintiff sued the defendant for legal malpractice. *Id.* at 608-09.

We held that the cause of action accrued more than one year before the complaint was filed. Citing the aforementioned cases, we found that the plaintiff suffered an injury as early as the time that Argonauts filed its suit for the wrongful attachment in August of 1978, when the plaintiff "received periodic billings from its lawyers for services in the defense of the Argonauts case and paid bills as they were received throughout the pendency of that suit." *Id.* at 612; *see also Tennessee WSMP, Inc. v. Capps*, No. 03A01-9407-CV-00241, 1995 WL 83579 (Tenn. App. Mar. 2, 1995)*; Dukes v. Noe*, 856 S.W.2d 403 (Tenn. App. 1992); *Batchelor v. Heiskell, Donelson, Bearman, Adams, Williams & Kirsch*, 828 S.W.2d 388 (Tenn. App. 1991); *Bridges v. Baird*, Shelby Law No. 32, 1989 WL 740 (Tenn. App. Jan 9, 1989); *Denley v. Smith*, Shelby Law No. 48, 1989 WL 738, *4 (Tenn. App. Jan. 9, 1989) ("[T]he action accrued when any damages, no matter how small, became apparent."); *Master Slack Corp. v. Bowling*, Hardeman Law No. 2, 1987 WL 10406 (Tenn. App. May 5, 1987); *Citizens Bank v. Williford*, No. 85-315-II, 1986 WL 6056, *7-9 (Tenn. App. May 29, 1986) (Koch, J., concurring); Annotation, *When Statute of Limitations Begins to Run Upon Action Against Attorney for Malpractice*, 18 A.L.R.3d 978 (1968).

Since *Carvell*, the issue has been revisited by the Court of Appeals on a few occasions. *See, e.g., Tanaka v. Meares*, No. 03A01-9710-CV-00463, 1998 WL 237717 (Tenn. App. May 12, 1998); *Rayford v. Leffler*, 953 S.W.2d 204 (Tenn. App. 1997); *Bokor v. Bruce*, No. 01A01-9603-CV-00119, 1996 WL 465235 (Tenn. App. Aug. 16, 1996)*; Smith v. Petkoff*, 919 S.W.2d 595 (Tenn. App. 1995). In *Porter-Metler v. Edwards*, No. 03A01-9709-CV-00393, 1998 WL 131515 (Tenn. App. Mar. 25, 1998), the plaintiff hired the defendant attorney to represent her in a personal injury suit. A complaint was filed[10] but process and alias process were returned unserved in 1993. Because further process was not issued and a new complaint was not timely filed, the trial court dismissed the action.[11] The plaintiff proceeded to bring a legal malpractice suit against the defendant on June 12, 1995. *Id.* at *1. Citing the two-prong rule articulated in *Carvell, supra,* the Court stated:

> Regarding the first part of the discovery rule, plaintiff argues that she did not suffer a legally cognizable injury until the court entered an order dismissing her underlying case. If the issue of whether dismissal should have been granted were *less clear or open to reasonable legal debate*, the plaintiff might have a stronger argument. But in this case, where service of process was not timely reissued, it was patently clear that plaintiff's claim against [the alleged personal injury tortfeasor] had become time-barred and there was nothing that could have been done to revive her action. Thus, she suffered a legally cognizable injury at

---

[10] The plaintiff had earlier filed a complaint but took a voluntary nonsuit. *Id.* at *1.

[11] Although the opinion does not specify the date of the trial court's order, presumably the order was entered within one year before June 12, 1995.

> the expiration of the six-month period within which she was allowed by the Tennessee Rules of Civil Procedure to reissue a summons. . . .

*Id.* at *2 (emphasis added).

*Carver Plumbing Co. v. Beck*, No. 01A01-9708-CV-00377, 1998 WL 161112 (Tenn. App. Apr. 8, 1998), involved facts somewhat similar to the facts in the present case. The defendant attorney was hired by the plaintiff to file a mechanic's lien. The defendant filed the lien but failed to timely file a suit to enforce the lien in accordance with T.C.A. § 66-11-115 (c) (1993) (suit must be brought within ninety days of filing of the mechanic's lien). The issues, however, were different than the issues in the present case, since in *Carver Plumbing* the parties did not dispute that the plaintiff "suffered a legally cognizable injury . . . when the 90-day time period for filing a suit to enforce the mechanic's lien expired." *Id.* at *3.

Finally, the Supreme Court recently addressed this issue again in *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528 (Tenn. 1998). *Kohl* involves a legal malpractice claim concerning alleged erroneous advice given in connection with the client's profit sharing plan. The trial court found the law firm liable for some of its actions in connection with the profit sharing plan and awarded damages therefor. However, the trial court held that the claims relative to the rollovers and contributions of individual retirement account funds were barred by the one-year statute of limitations. The Court of Appeals affirmed the judgment of the trial court, and the Supreme Court affirmed the two lower courts.

The Court noted that in September of 1988, the Kohls received a letter from the IRS informing them of some problems with their 1986 tax return and requested further information concerning the statements in the return. The Kohls's accountant responded to the letter shortly thereafter with the information sought by the IRS. On October 24, 1988, Robert Kolarich, another of the Kohls's lawyers, wrote Dearborn & Ewing advising the law firm of new problems with the IRS concerning the pension and profit sharing plans. Mr. Kolarich's letter stated, among other things:

> Evidently, Mr. Huffstutter had advised that the funds held in an IRA account could be transferred to the pension and profit sharing account and the IRS is reviewing the transaction.

*Kohl*, 977 S.W.2d at 531.

On May 1, 1990, Kohl filed a legal malpractice suit against Huffstutter and Dearborn & Ewing alleging that they committed malpractice in connection with the profit sharing plan in various particulars. The trial court, in holding that the statute of limitations barred the claims

pertaining to the rollover and contributions to the profit sharing plan, noted that the October 24, 1988 letter from Kolarich indicated that both Kohl and Kolarich were aware of the problem and it was so severe that Kohl was changing law firms.

The *Kohl* Court began by reiterating the two-prong rule articulated in *Carvell, supra. Id.* at 532. In discussing the actual injury prong, the Court stated that "[a]n actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer 'some actual inconvenience,' such as incurring an expense, as a result of the defendant's negligent or wrongful act." *Id.* Moreover, the Court stated:

> A plaintiff may not, of course, delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff. Allowing suit to be filed once all the injurious effects and consequences are known would defeat the rationale for the existence of statutes of limitations, which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims.

*Id.* at 533 (citations omitted).

As for the facts before them, the Court noted that the Kohls needed only to be aware of facts sufficient to put them on notice that an injury had been sustained as a result of erroneous advice, and that Kolarich's letter established that the Kohls had notice of a problem in this regard. The Court found that the inquiry by the IRS was sufficient in itself to satisfy the injury prong of the discovery rule, and that Kolarich's letter of October 24, 1988 to the law firm satisfied the knowledge prong. The Court said:

> The plaintiffs [Kohl] *suffered an actual injury for purposes of the discovery rule when they began to incur expenses, or at least had to take some action, as a result of the defendant's negligent advice.* This would have been on October 19, 1988 when their accountant had to respond to the IRS's request for information after it noted a conflict between the amount reported by the plaintiffs on their tax returns and the amounts reported by payers. The plaintiffs' arguments to the contrary notwithstanding, the fact that the IRS had not taken any formal action against the Kohls as of that date, such as filing suit against them or issuing a deficiency notice, is largely irrelevant because, as noted above, it was unnecessary for the plaintiffs to have suffered all of the injurious effects or consequences of the defendant's negligence in order for the statute to begin running.

977 S.W.2d at 533 (emphasis added).

In the instant case, Bradson contends that it did not suffer from a "legally cognizable injury" until the trial court entered an order dismissing its lien interest in the Shelby Tissue project on June 11, 1996. Bradson claims that it was impossible for it to know whether it had suffered an injury until its alternative claims related to the Shelby Tissue litigation were resolved. Law Firm's Responses to Request for Admissions includes the following:

> REQUEST NO. 8:     Admit that, as a result of attorney Joseph Crabtree's failure to perfect this lien, Bradson lost its rights to assert a lien against the Shelby

11

Tissue Project.

> RESPONSE NO. 8: Denied. It is admitted that Chancellor Peete has ruled that the lien was not perfected but the Defendants understand that the ruling is on appeal by the Plaintiff. The Defendants assert that the position taken by Plaintiff will be sustained.

Bradson argues that this admission demonstrates the parties' belief that Bradson would prevail in the underlying action.

The evidence unequivocally demonstrates that Bradson was aware that the Defendants may have been guilty of negligence at least as early as 1994. Moreover, from a review of the record, it appears that Bradson suffered an "actual" or "legally cognizable" injury at the time the Law Firm allegedly failed to perfect the lien. This is apparent by its own attorney's statements during the summary judgment proceedings which were as follows:

> Bradson knew, had a cause of action for legal malpractice by the failure or at least the alleged failure of the Law Firm to perfect the lien in the Shelby Tissue project. That's why I don't think there is a *Carvell* issue here. They were aware of the claim, they were aware who did it, they could have sued at that point.
>
> &ast; &ast; &ast;
>
> Right. Now, and but for the March 1994 Agreement, we would have had to have sued them by May 6th. We would have, and we had the Complaint prepared, there's no - everybody knew the facts. The only thing, why would we have sued them, because the first thing they would have done is come in and say, stay this litigation because the amount of damages is uncertain. . . .

Furthermore, as with the plaintiffs in *Kohl*, Bradson suffered an actual injury when they were "forced to take some action." *Kohl*, 977 S.W.2d at 532. As the preceding statement reveals, Bradson had hired an attorney and had prepared a complaint. They had suffered "some actual inconvenience." *Kohl*, 977 S.W.2d at 532. While Bradson contends that they did not suffer an actual injury until June 11, 1996 when the trial court dismissed their claim, "allowing suit to be filed once all the injurious effects and consequences are known would defeat the rationale for the existence of statutes of limitations." *Kohl*, 977 S.W.2d at 533. Bradson suffered an actual injury well before June 11, 1996 and was aware that Law Firm was the cause. Thus, the statute of limitations has run, and, consequently, the trial court was correct in granting summary judgment to the Defendants.

Accordingly, the order of the trial court granting summary judgment to the Defendants is affirmed, and the case is remanded to the trial court for such further proceedings as may be necessary. Costs of appeal are assessed against appellant.

_____

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**HEWITT P. TOMLIN, JR.**
**SPECIAL JUDGE**

**DAVID R. FARMER, JUDGE** (Not Participating)