IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 7, 2020 Session

## PHILLIP MAHNKEN v. ANDREW BETTIS AVIATION, LLC

**Appeal from the Circuit Court for Shelby County**
**No. CT-002666-18   Yolanda R. Kight, Judge**

_____

### No. W2019-01903-COA-R3-CV
_____

Employee sued his former employer for the compensation that he alleged he was owed under an employment contract. Following a bench trial, the employee was awarded damages representing thirty days' compensation. The employer appeals, arguing that its nonperformance on the contract was excused by an implied condition. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG, and CARMA DENNIS MCGEE, JJ., joined.

William B. Ryan, Memphis, Tennessee, for the appellant, Andrew Bettis Aviation, LLC.

G. Coble Caperton and Warren P. Campbell, Memphis, Tennessee, for the appellee, Phillip Mahnken.

### MEMORANDUM OPINION[1]

#### FACTUAL AND PROCEDURAL HISTORY

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

On February 6, 2017, Phillip Mahnken ("Appellee") and Andrew Bettis Aviation, LLC ("Appellant") entered into a written employment contract when Appellant hired Appellee as a pilot. When the parties could not agree on changes to the terms of their contract, Appellant terminated Appellee without cause. One of Appellee's owners, David Turner, notified Appellant of his termination during a phone call on September 20, 2017. On that same phone call, after Mr. Turner notified Appellee that he was being terminated, Appellee notified Mr. Turner that he would be "going out on workers' comp[ensation]" because of a back condition he was experiencing.[2] Mr. Turner then sent Appellee a form entitled "State of Tennessee Department of Labor and Workforce Development Division of Employment Security Separation Notice" on September 21, 2017. The Separation Notice states, in relevant part, that Appellee's last date of employment, before he was discharged, was September 20, 2017, and that the reason for the separation was an inability "to agree on acceptable contract terms regarding continued employment." Appellee requested but did not receive wages for the thirty days after Appellant gave him notice of his termination (i.e., for September 21, 2017 through October 20, 2017).

Appellee then filed a workers' compensation claim for his back injury. The "Workers' Compensation Closed Claim Notice" in the record indicates that the date of Appellee's injury was September 20, 2017 and the cause of the injury was repeated lifting and sitting. The claim notice also indicates that Appellant had "knowledge"—whether that Appellee filed a workers' compensation claim or just that Appellee had an injury, it is unclear—on September 20, 2017, and Appellee made his report to the claims company on October 2, 2017. Appellee saw a doctor on October 18, 2017 as part of his workers' compensation claim, at which time the doctor signed a "Work Status Form" that stated: "Recommended return to work on 10/18/17 with the following limitations: [] Light Work: Lifting 25 pounds maximum [and] No Flying Pending MRI." The same form also indicated an apparent prescription or order for an anti-inflammatory medication, physical therapy, and an MRI of Appellee's spine. Appellee saw the same doctor again on October 30, 2017, when the doctor signed another work status form, which this time had "10/30/17" written next to "Full Duty (No Restrictions)" under "Work Status." It appears to be undisputed that this meant that the Appellee could return to full duty as of October 30, 2017.[3]

On November 21, 2017 Appellee filed a civil warrant in the Shelby County General Sessions Court ("the general sessions court"), alleging Appellant failed to pay Appellee the required wages under their employment contract. On February 26, 2018, Appellant filed its own civil warrant in the general sessions court against Appellee for reimbursement of $14,539.94 in training expenses it paid during Appellee's employment.[4] After trial on June

---

[2] At the bench trial in this case, Appellant played a recording of this phone call between Appellee and Mr. Turner. However, the recording was not itself entered in evidence as an exhibit, nor was it transcribed in the record.

[3] It is unclear from the evidence in the record if Appellee saw this doctor for another visit between October 18, 2017 and October 30, 2017. He also apparently had an MRI in between those two doctor visits.

[4] Appellant attached an itemized reimbursement schedule and an invoice addressed to Appellee

4, 2018, the general sessions court entered judgment in favor of Appellee on his civil warrant in the amount of $7,331.88, which the parties do not dispute reflects thirty days of pay. The general sessions court also entered judgment in favor of Appellee on Appellant's civil warrant. Appellant appealed to the Shelby County Circuit Court ("the circuit court") on June 7, 2018.[5]

A second bench trial occurred in the circuit court on September 9, 2019. The only witnesses to testify were Appellee and Mr. Turner. Mr. Turner testified that he did not learn of Appellee's back injury or intent to file a workers' compensation claim until his phone call with Appellee on September 20, 2017. In fact, from Mr. Turner's testimony, it appears that only after he told Appellee he was fired during that conversation did Appellee then respond that he was "going out" on workers' compensation due to his back issues. Mr. Turner testified, however, that it is Appellant's policy to take pilots who cannot fly at full duty off of flight status and not pay them, but offered no documentary proof of this policy. He also testified unequivocally that regardless of whether Appellee had a disability or not, he had no intention of requesting Appellee to fly after September 20, 2017, and that he considered Appellee to be fired effective that date.

Appellee testified that he had been flying with back pain since approximately a few months after beginning his employment with Appellant, and Mr. Turner confirmed that there had never been any problems with Appellee's performance as a pilot. Appellee testified that he had spoken to his personal doctor about his back pain, but that no doctor had recommended he be suspended from flying prior to his termination. He testified that the doctor he saw on October 18, 2017, only recommended that he not fly until he had an MRI and that he be put on light duty, but that a doctor cannot suspend him from flying, only the FAA can take that action. He also testified that he had spoken to his immediate supervisor about his back pain, but, again, Mr. Turner testified that he was not aware of Appellee's back injury/workers' compensation claim until after he had already fired Appellee.

_____

dated September 28, 2017 to its civil warrant, along with a copy of the parties' employment contract. The provision in the employment contract dealing with reimbursement of expenses is in Section 10, "Termination of Agreement," and states as follows:

> In the event Employee terminates this Agreement, or Employee loses medical and/or flying authority from the Federal Aviation Administration (FAA), Employee shall fully reimburse Company upon exit day, of full time employment, for any and all expenses associated with residential re-location and initial and continuing annual flight training and education paid by Company. This would include any re-location expenses, training and flight check cost, airfare, hotel, meals, and salaries paid to employee during the training period.

[5] It appears that Appellant abandoned its claim for reimbursement of training expenses on appeal to the circuit court. In any event, Appellant has not raised that claim in any form in the instant appeal, and therefore we need not address it.

The circuit court also entered judgment in favor of Appellee, on October 3, 2019. The circuit court's findings included that the demeanor and testimony of Appellee and Mr. Turner were credible, and that Appellee was entitled to payment for the thirty days after his termination in the amount of $7,331.88. Appellant timely appealed to this Court.

## ISSUES PRESENTED

The main issue in this case, as raised by both parties, is whether Appellee is entitled to recover thirty days' worth of pay from Appellant.[6] Appellee raises an additional issue: whether the appeal filed by Appellant is frivolous. We will address these in turn.

## STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *see also* ***In re Estate of Walton v. Young***, 950 S.W.2d 956, 959 (Tenn. 1997). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." ***Dunn v. Matrix Exhibits, Inc.***, No. M2003-02725-COA-R3-CV, 2005 WL 2604048, at *2 (Tenn. Ct. App. Oct. 13, 2005) (citations omitted). "The trial court is in the best position to resolve factual issues that hinge on credibility and an appellate court will not re-evaluate a trial court's assessment of a witness's credibility absent clear and convincing evidence to the contrary." ***Hutchings v. Jobe, Hastings & Assocs.***, No. M2010-01583-COA-R3-CV, 2011 WL 3566972, at *2 (Tenn. Ct. App. Aug. 12, 2011) (citation omitted).

## DISCUSSION

## I.

This breach of contract action originated when Appellee claimed that under his employment contract with Appellant he was entitled to, but did not receive, thirty days' notice of his termination and compensation for those thirty days. The parties stipulated that paragraph 10 of their contract governs termination without cause. The relevant provision of paragraph 10 reads as follows:

> Without cause, the Company or Employee may terminate this agreement at any time upon thirty (30) days' written notice to the other party. In the event Employee terminates this Agreement, or Employee loses

---

[6] Each party phrases the issue slightly differently in their appellate brief. Appellant asks "whether Mr. Mahnken is entitled to recover 30 days of pay from Andrew Bettis Aviation, LLC where it was undisputed that he was physically unable to work, by virtue of disability, for that 30-day period." Whereas, Appellee asks if "the trial court err[ed] when it awarded Appellee/Plaintiff thirty (30) days wages from the Appellant based on the employment agreement between the parties."

medical and/or flying authority from the Federal Aviation Administration (FAA), Employee shall fully reimburse Company upon exit day, of full time employment, for any and all expenses associated with residential re-location and initial and continuing annual flight training and education paid by Company. This would include any re-location expenses, training and flight check cost, airfare, hotel, meals, and salaries paid to employee during the training period. Without limitation, termination of Employee pursuant to this Section 10 shall not relieve Employee of his/her obligations under Section 6 hereof.

Appellee contends that Appellant breached the above contract when it terminated his employment without cause but refused to give him the required thirty days' notice and thereafter refused to pay him for that thirty-day period. "When a plaintiff alleges breach of contract, he or she is responsible for proving (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract." *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006) (internal quotation marks omitted) (quoting *Custom Built Homes v. G.S. Hinsen Co., Inc.*, No. 01A01-9511-CV-00513, 1998 WL 960287, at *3 (Tenn. Ct. App. Feb.6, 1998)).

Appellant does not dispute the existence of the above contract, nor does it dispute that Appellee's employment was terminated without cause. Rather than focusing on the express terms of the contract, Appellant resorts to an implied condition that it asserts is relevant in this case, citing *Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713 (Tenn. Ct. App. 1998). Specifically, the *Jenkins* panel held that "[c]ontracts to perform personal acts are considered as made on the implied condition that the party shall be alive and capable of performing the contract, so that death or disability, including sickness, will operate as a discharge, termination of the contract, or excuse for nonperformance." *Id.* at 720–21. According to Appellant, the employment contract qualifies as a personal services contract, and Appellee does not dispute this. Moreover, Appellant asserts that "because [Appellee] was not physically able to perform his responsibilities and duties as a pilot due to his medical disability, under the parties' employment agreement, [Appellant's] obligation to pay [Appellee] during the 30-day notice period following his termination was fully excused and permissible under Tennessee contract law."

The trial court, however, rejected Appellant's argument. Specifically, the trial court found that Appellant was required to give Appellee thirty days' written notice of the termination of his employment and that Appellee was entitled to compensation during that thirty-day period. Moreover, the trial court found that

[Appellee] was not disabled when he was terminated and [Appellant] didn't advise [Appellee] that it considered him to be disabled due to [Appellee] filing a worker's compensation claim the day after he was terminated and

- 5 -

that it needed him to get a medical release to fly. Mr. Turner testified that he had no intention of calling [Appellee] in to work after his termination on September 20, 2018.[7] Had [Appellee] been called to perform the services that he agreed to under the contract, he most likely would have adhered to the contract terms.

Appellant argues on the appeal that the trial court erred in finding that Appellee was not disabled during the relevant thirty-day period and that its finding that Appellee was entitled to an additional thirty days' pay must therefore be reversed, again relying on ***Jenkins***. It is true that in the context of personal services contracts, when a party's disability prevents him from being able to perform his contractual duties, it operates as a discharge, termination of the contract, or excuse for nonperformance, unless the parties contract otherwise. *See **Cochran v. Robinhood Lane Baptist Church***, No. W2004-01866-COA-R3-CV, 2005 WL 3527627, at *4 (Tenn. Ct. App. Dec. 27, 2005) (citations omitted); ***Jenkins***, 990 S.W.2d at 720–21 (citations omitted); ***Am. Nat. Ins. Co. v. Jackson***, 12 Tenn. App. 305, 308–09 (Tenn. Ct. App. 1930), *perm. app. denied* (Tenn. Feb. 7, 1931) ("A contract for personal service is terminated by the death, insanity, sickness, or permanent disability of a servant, whereby he is unable to perform his contract, unless the parties contracted to the contrary."). Thus, this general rule is applicable unless the parties provide otherwise in their contract.

The trial court's order appears to credit Appellant's argument that this condition was indeed applicable and may constitute a proper defense to Appellee's breach of contract action. Upon our de novo review of the contract's terms, however, we are not necessarily convinced. *See **Guiliano v. Cleo, Inc.***, 995 S.W.2d 88, 95 (Tenn. 1999) ("The interpretation of a contract is a matter of law that requires a de novo review on appeal."). While the employment contract is silent as to death of one party, it is not silent as to the disability of Appellee. Specifically, paragraph 10 of the contract, wherein it provides for the thirty days' notice of termination without cause, also states: "In the event . . . Employee loses medical and/or flying authority *from the Federal Aviation Administration (FAA)*, Employee shall fully reimburse Company . . . for any and all expenses associated with residential re-location and . . . training and education paid by Company." (emphasis added). This language, as well as its placement in the section of the contract dealing with termination without cause, leads us to two fairly obvious conclusions: (1) that the contract specifically deals with the issue of a disability preventing a pilot from flying but does not excuse Appellant from payment for the thirty-day notice period during this time; and (2) that such an inability to fly must be determined by the FAA. Because the employment contract contains an express term regarding the proper method of determining a disability and its remedy, it appears that it should control over the more general rule supplied by the common law. *Cf. **Bradson Mercantile, Inc. v. Crabtree***, 1 S.W.3d 648, 652 (Tenn. Ct.

---

[7] We conclude based on the record that this must be a typographical error, and should instead state that the date was September 20, 2017.

App. 1999) ("If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. . . . Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made.").

There can be no question that Appellant cannot meet the express requirement of the employment contract to show that Appellee was disabled. Appellee confirmed that only the FAA can suspend him from flying—a doctor cannot. Mr. Turner testified, and Appellee does not seem to dispute, that under FAA regulations, pilots are obligated to report any problems they have that would interfere with their pilot duties, including injuries. However, Appellee testified that he was not required to report this specific injury to the FAA. Indeed, Mr. Turner conceded that he did not notify Appellee that he needed to report his injury to the FAA, and there is no proof that the FAA was involved in this case at all. In fact, Mr. Turner testified that he did not advise Appellee that Appellee would need a medical release before he would be called to fly "because [Mr. Turner] never intended to call [Appellee] to fly [after terminating him.]"

Still, Appellant cites Mr. Turner's testimony that pursuant to Appellant's policy, if an employee-pilot reports an injury that could affect their ability to fly, Appellant takes the pilot off of flight duty until the injury is addressed and there is medical proof that the pilot is cleared to fly at full duty. Mr. Turner also testified that Appellee "would have" been removed from flight status and not paid, pursuant to this policy. We cannot conclude that this testimony changes the result. Here, Mr. Turner provided no documentary proof to support the existence of this policy, such as an employee handbook, and this policy is certainly not reflected in the employment contract. The employment contract, however, contains an integration clause:

> This Agreement contains all of the understandings and representations between the parties pertaining to the subject-matter hereof and supersedes all other prior undertakings, terms of employment, offer letters, and agreements, whether oral or in writing, if any. This Agreement may be modified only by an instrument in writing signed by all the parties.

Mr. Turner's testimony that Appellant had some unwritten policy concerning disability therefore does not alter the plain mandate of the contract that only the FAA will be authorized to determine a pilot's ability to fly and that the remedy for such a disability is the reimbursement of certain expenses. Under these circumstances, it appears that nothing in the plain language of the contract authorized Appellant to deny Appellee payment of thirty days' compensation.

Moreover, even assuming, arguendo, that the **Jenkins** implied condition is applicable to the employment contract at issue, we conclude that it provides no support for Appellant's position. Appellant does not dispute that it terminated Appellee's employment

effective September 20, 2017. Mr. Turner testified at trial, and the Separation Notice confirms, that Appellant intended to terminate Appellee's employment as of September 20, 2017, the same date Mr. Turner notified Appellee orally of his termination. Mr. Turner also testified that he "wasn't going to ask [Appellee] to fly after [September 20, 2017]" under any circumstances—regardless of whether Appellee was injured or intended to file a workers' compensation claim.

Furthermore, the proof showed that the catalyst for the termination was not any alleged disability, nor did Mr. Turner even know of Appellee's alleged disability before he fired Appellee. Mr. Turner testified that he was not aware of Appellee's intent to file a workers' compensation claim for his injury until after he had already terminated Appellee during their phone call on September 20, 2017. Therefore, the proof is unequivocal that Appellant intended to terminate, and did terminate, its employment contract with Appellee on September 20, 2017, without any knowledge or consideration of any alleged disability.

Under these circumstances, Appellee's ability to fly or perform his contractual work duties after that date is completely irrelevant—his employment contract had already been terminated. As the language of *Jenkins* makes clear, the rule allows for the discharge, termination, or nonperformance on a contract when death or disability prevents a party from being "capable of performing the contract[.]" *Jenkins*, 990 S.W.2d at 720–21. In other words, Appellant essentially argues that it should be excused from performing under the contract, i.e., paying thirty days' compensation because Appellant had a disability that rendered him unable to perform "his responsibilities and duties" under the contract. The problem with this argument, however, is that it ignores the fact that it was Appellant who terminated the employment contract without cause—that is, not based on any purported disability. In other words, Appellant had already rendered Appellee unable to perform the contract when it fired him on September 20, 2017. As of that termination, Appellee no longer had any "responsibilities and duties" to perform. Any attempts to glom Appellant's later knowledge of Appellee's back injury, worker's compensation claim, and light duty recommendation onto Appellant's efforts to reduce the money owed to Appellee are nothing more than revisionist history. Indeed, the doctor's recommendation did not even occur until near the end of the thirty-day period at issue. And Mr. Turner testified unequivocally that he would not have asked Appellant to return to his duties after firing him on September 20, 2017, regardless of any alleged disability. Simply put, the facts show that by terminating Appellee's employment on September 20, 2017 without cause or notice, Appellee's performance under the contract was therein excused. His alleged inability to perform on the contract thereafter is wholly irrelevant.

In sum, Appellant's arguments on appeal fail on a number of grounds. Suffice it to say, Appellant has not shown that it complied with the express terms of the contract or that its nonperformance of the contract was in any way excused. Therefore, we arrive at the same conclusion as the circuit court, albeit by way of a different analysis. *See Robinson v. Currey*, 153 S.W.3d 32, 40 (Tenn. Ct. App. 2004) (quoting *Shutt v. Blount*, 249 S.W.2d

904, 907 (Tenn. 1952)) ("If the Trial Judge reached the right result for the wrong reason, there is no reversible error."). Appellee was entitled to thirty days' notice, and thus pay for those thirty days, under the express terms of the contract. *See Phillips v. Morrill Elec., Inc.*, No. 03A01-9901-CH-00030, 1999 WL 771511, at \*5 (Tenn. Ct. App. Sept. 15, 1999) (citing 27 Am. Jur. 2d, *Employment Relationship* § 43 (1996)) ("[A]n employee who is summarily discharged with less notice than specified under the contract may recover compensation for the notice period only, and not for the balance of the contract period."). Therefore, we affirm the trial court's decision that Appellee is entitled to payment from Appellant in the amount of $7,331.88.

## II.

We next consider Appellee's request to deem this appeal frivolous and award him attorney's fees. Tennessee's frivolous appeals statute reads as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. This Court has previously elaborated on what constitutes a frivolous appeal:

> Successful litigants should not have to bear the expense and vexation of groundless appeals. An appeal is frivolous when it has no reasonable chance of success, or is so utterly devoid of merit as to justify the imposition of a penalty. We exercise our discretion under the statute sparingly so as not to discourage legitimate appeals.

*Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006) (citations and quotations omitted). Our supreme court has described awards of attorney's fees for frivolous appeals as follows:

> [I]f the appellate court determines that an appeal is frivolous, the appellate court may award attorney's fees pursuant to this statute. Any such award rests in the appellate court's sound discretion. *See Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009) ("The decision to award damages for the filing of a frivolous appeal [under section 27-1-122] rests solely in the discretion of this Court."). This discretion is exercised "sparingly so as not to discourage legitimate appeals." *Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006).

*Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017).

Although Appellant's argument is not in any way persuasive for the reasons explained above, we still cannot conclude that this appeal was wholly frivolous. Importantly, Appellant's brief was fully complaint with Rule 27 of the Tennessee Rules of Appellant Procedure and its argument, though strained, was supported by appropriate citations to authority. We therefore decline to find that this was a frivolous appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court of Shelby County is affirmed. Costs of this appeal are taxed to Appellant Andrew Bettis Aviation, LLC, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE